Robert Paul O'Neal, Appellee, v. Michael A. Caffarello, Appellant.

Gen. No. 40,886.

576

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed February 14, 1940. Rehearing denied March 12, 1940.

EKERN & MEYERS, of Chicago, for appellant; DONALD L. THOMPSON and VERNON A. FORSBERG, both of Chicago, of counsel.

AUGUSTINE J. BOWE and WILLIAM J. BOWE, both of Chicago, for appellee; JOHN D. CASEY, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

In September, 1937, plaintiff was employed by the American Air Lines at the Chicago Municipal Airport. He was supervisor of engine, propeller and accessory overhauling on the large planes that fly from coast to coast, and approximately 56 men worked under him. He also possessed a transport pilot's license, which was issued by the department of commerce in August, 1935. He had not been in an accident of any description, had good eyesight and did not wear glasses. Defendant was the owner of the controlling stock in an airplane corporation and in another corporation which operated airport cars. The parties occupied adjoining hangars at the airport. Plaintiff frequently performed motor work on airplanes for defendant. Defendant has been a licensed pilot for 15 years. The parties were friends. Defendant, accompanied by Ralph Caffarello, his brother, and plaintiff, as his guest, left Chicago between 3 and 4 o'clock on a Monday morning in September, 1937, in a new 1937 Pack-

ard, 8 cylinder, 5-passenger car, driven by defendant. The car was in good condition. They intended to go hunting in the vicinity of Kenora, Ontario, Canada, and wished to reach their destination, a distance of 750 miles, some time that night. They would have reached their destination as planned, except for an accident which caused the loss of gasoline, a distance of 40 miles from Kenora at about 9:30 p. m. Defendant did the driving. Ralph Caffarello and plaintiff alternated between the front and rear seats, and at times would sleep. They arrived at Kenora. On the journey they traveled through between 60 and 100 cities and towns, at which time the speed of the car was reduced and traffic regulations observed. The average rate of speed was between 45 and 60 miles per hour. Plaintiff states that the speed of the car never exceeded 60 miles per hour. The defendant and Ralph say that at times the speed reached 80 miles an hour; that there were no accidents and that Michael Caffarello drove carefully, cautiously and prudently; that no one had any cause to criticize as to the manner in which the car was operated; that on the route they encountered numerous curves and traveled in darkness with the headlights burning both on the morning of departure and the night of arrival at the point where they were stalled after losing their gasoline at 9:30 p. m., some 40 or 50 miles from Kenora, their destination. On the return trip on September 18, 1937, they left International Falls after having dinner. It was dark and required the use of the headlights of the car. Defendant drove the car. Plaintiff was seated in the front seat opposite him. Ralph was seated alone in the rear. They encountered many curves and hills after leaving International Falls. At about 11:30 p. m., while the automobile was being driven on route 53, about 1 mile north of the village of Orr, and about 45 or 50 miles from International Falls, in rounding a curve the right wheels got off the right side of the hard surfaced high-

way into some loose torpedo sand and started to skid. Finally the car was brought to a stop right side up. Because of the accident, plaintiff received a cut in his left eye that caused almost total blindness in that eye. A plat of the road shows that at the point where the accident occurred, it is 28 feet wide, with a 4 foot shoulder on each side. The road has a black top surface. On February 17, 1938, plaintiff filed his two-count complaint in the circuit court of Cook county. The first count relied on charges of negligence and the second count on wilful and wanton acts. The trial resulted in a verdict finding the defendant guilty and assessing damages in the sum of $15,700. Defendant moved for a directed verdict in his favor, for a judgment notwithstanding the verdict and for a new trial, all of which motions were denied. Judgment was entered on the verdict, to reverse which this appeal is prosecuted.

The first criticism leveled at the judgment is that the court erred in denying defendant's motion to discharge the jury after counsel for plaintiff by his *voir dire* examination, had informed the jury that defendant was covered by insurance issued by the Underwriters at Lloyds of London. Prior to the *voir dire* examination of the jury, plaintiff's counsel presented, and the court allowed to be filed, an affidavit sworn to by plaintiff, all of which was upon information and belief, in which he asked the court to be permitted to question prospective jurors as to their financial interest if any, in the Underwriters at Lloyds of London. The reasons advanced were that the cause was being defended by the Underwriters, who had agents in Chicago; that the defense attorneys were engaged by the Underwriters; that there were at least 50 persons employed as claim adjusters, agents and attorneys in Chicago who were financially dependent upon the Underwriters. A counter-affidavit sworn to by an attorney who was a member of the firm representing the defendant was

filed. The affidavit stated that he had charge of the preparation and defense of the suit; that the defendant does have certain insurance issued by certain individuals who are members of the Underwriters at Lloyds of London, which may insure the defendant's liability to some extent in the instant case; that each of the persons so liable are individuals who have assumed the individual portion of the total liability which has been assumed by all; that no one of the individuals is liable for the obligation assumed by any other of the Underwriters; that the Underwriters on defendant's insurance contracts are citizens and actual residents of the Kingdom of Great Britain; that none of them resides in Illinois; that none of them is on the jury panel; that all of the Underwriters do not go on every contract of insurance; that the contracts which the defendant holds are not signed by more than 5 or 6 per cent of the Underwriters at Lloyds; that the agent who wrote the contract of insurance was R. N. Crawford & Company; that the investigators who made the investigation were Toplis & Harding; that the attorneys employed to defend the claim were Ekern & Meyers; that no officer, agent or employee of either of these firms was on the jury panel; that no other agent, investigator or attorney for any of the other Underwriters had any interest whatever in the outcome of the litigation; that the maximum possible liability of the Underwriters on the policy was for $10,000 and costs. Thereafter, the court, over objection of defendant, allowed plaintiff to examine the jury as follows:

"I will ask you gentlemen individually whether or not any of you are employed by or interested in any way, either as policy-holders or otherwise, or have any members of your families or your immediate friends an interest in a concern known as the Underwriters at Lloyds of London. Now if any of you have such connection or know of the parties mentioned, if you so state, you will be excused.

"A juror: I write insurance for Lloyds.

"Mr. Bowe: All right, I think the juror may be excused by agreement. What is your name?

"The Juror: Anthony Mitus.

"The Court: You may ask these additional jurors who came in whether they are in any way connected.

"Mr. Bowe: Yes. Now, were you gentlemen sitting in the court room when these questions were put to the other jurors?

"The Jurors: Yes, sir.

"Mr. Bowe: That is, as to your acquaintance with any of the parties or the concern which was mentioned to you, or any of the attorneys, I take it none of you have any such connection or acquaintance?

"A Juror: The question about insurance, is that automobile insurance or life insurance?

"Mr. Bowe: Automobile insurance, and it is the only one concern mentioned." Plaintiff responds that in thus examining the jury, he was within his rights, and relies on the case of *Smithers v. Henriquez*, 368 Ill. 588. He calls attention to the fact that the record shows justification for the inquiry because a venireman named Mitus answered that he wrote insurance for Lloyds. Plaintiff states that the answer shows justification for his apprehension, as set forth in the affidavit. The *Smithers* case contains a thorough and able review of the cases in this and other States. The ruling on a motion for leave to examine veniremen as to their connections with an insurance company where the defendant is covered by insurance, rests largely in the discretion of the trial court. We do not believe that the record shows that the plaintiff, in asking the questions complained of, was acting in bad faith. We are of the opinion, therefore, that the point is not valid.

The second point urged is that wilful and wanton acts permit recovery of punitive damages, and it is not in accord with the public policy of this State to

allow such damages where wilful and wanton acts were committed in another State. Plaintiff states that no punitive damages were demanded or allowed in the case, and that the instruction on damages limited the jury to damages that would be a fair compensation for the injuries sustained by plaintiff. We have examined the authorities and conclude that the cases which hold that punitive damages will not be allowed for wilful and wanton acts committed in another State are not applicable to the case at bar, where no punitive damages were demanded. Under his second point, defendant also asserts that there was no wilful and wanton misconduct on the part of defendant. In connection with this point, defendant states that the decision as to whether or not a defendant is guilty of wilful and wanton misconduct is for the court where there is no evidence from which a jury could reasonably find that a defendant was guilty of such misconduct. Plaintiff insists that the evidence shows that the defendant was guilty of wilful and wanton misconduct. Hence, it is necessary for us to consider the evidence. In addition to what has heretofore been stated, the evidence shows that the night of the accident was clear, but very dark, and that the weather was dry. The accident occurred as the automobile was driven, with the bright lights turned on, between 50 and 60 miles per hour, around a curve in the highway. The automobile turned over several times, after which it came to a stop on its wheels, right side up, on a shoulder of the highway. No one criticized or complained about the manner in which the car was being driven until about 15 minutes before the accident. Plaintiff states that about 15 minutes before the accident, the defendant drove his car around a curve in the road, at which time the car skidded and made gravel fly up, and that he then warned defendant by saying, "Take it easy." The defendant states that no skidding occurred at that time and that plaintiff did not make the remark. Ralph

Caffarello was asleep in the back of the car for some time before the accident. He testified that he was not listening or paying any attention to what conversation passed between plaintiff and defendant for an hour before the accident. Plaintiff testified that as the car approached the curve where the accident occurred, plaintiff again warned the defendant by saying, "Curve ahead," and that the defendant replied, "You are nervous." Ralph Caffarello stated that he did not hear plaintiff say anything and does not remember any such occurrence. Plaintiff states they did not pass another automobile immediately prior to the time they came upon the curve; that at a point 200 yards before reaching the curve, plaintiff said to defendant, "Curve ahead," but that defendant did not slacken his speed until the curve had been reached, when the defendant applied his brakes, skidded into the soft shoulder, ran to the left and then to the right of the road, where the car rolled over and came to a stop right side up on the left hand side of the road; that the highway at this point is constructed of gravel. Defendant denies that he heard the plaintiff say, "Curve ahead," and states that the lights from another car which was traveling in the opposite direction blinded him for an instant, and that he did not see the curve until right upon it; that his right wheels got off the road into some loose torpedo sand and started to skid; that he attempted to adjust the forward progress of the car and control its operation, and in doing so pulled it abruptly to the left, then to the right, after which the car rolled over several times and came to a stop on its wheels on the right shoulder of the highway. Ralph Caffarello testified that he had been sleeping part of the time; that he neither heard or saw anything unusual until he sat upright in the car immediately prior to the accident; that he saw lights coming toward them; that the highway was of a black top hard surface construction, about 30 feet wide; that after their car stopped rolling, it

stopped upright on the shoulder of the highway. In addition to the injuries to plaintiff, the defendant received five broken ribs and his brother received a cut on his head and his back was hurt.

We must assume that the jury accepted the testimony that was favorable to the plaintiff, and the reasonable inferences to be drawn therefrom. Fifteen minutes before the accident, the defendant's car, in going around a curve, skidded slightly and stones from the side were thrown up. At that time plaintiff warned defendant to be more careful by saying, "Take it easy." The defendant was, therefore, made conscious of the danger of skidding on a curve by the fact that he had skidded, and by plaintiff's warning. As the car approached the curve where the accident happened, plaintiff again warned him by saying, "Curve ahead." The defendant said, "You are nervous," and attempted to make the curve without slackening his speed of 60 miles an hour. The defendant testified on cross-examination that it is the better part of caution to bring the speed of a car down when approaching a curve so that the car will be under control. The defendant testified that an automobile going in the opposite direction, approached. The lights from the approaching automobile would illuminate the course and outline the curve. He was therefore, conscious of the curve ahead and conscious of the fact that he was going around that curve at 60 miles an hour. He deliberately disregarded his duty to slacken his speed to protect plaintiff from a known and impending danger and recklessly drove the car around the curve at such a high rate of speed that the right wheels went into the loose sand at the side of the pavement, and in consequence, the car skidded and turned over. We are of the opinion that competent evidence was presented to the jury, from which they had a right to decide that the defendant was guilty of wilful and wanton misconduct.

The third point asserted by defendant is that the court erred in denying his motion to instruct at the

close of all the evidence and for a judgment notwithstanding the verdict. Under this point he makes the statement that the rights of the parties and trial procedure are determined by the common law of Illinois, even though the mishap occurred in Minnesota. We agree with the answering statement of plaintiff that the substantive rights of the parties are governed by the laws of Minnesota and the procedure by the laws of Illinois. The case was tried in the spring of 1939. Under sections 48a and 48b of ch. 51, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 107.122, 107.123], the trial court and this court take judicial notice of the laws of a public nature enacted by any State or territory of the United States. We agree with defendant that the act means that the court takes judicial notice of statutes. Plaintiff asserts that there is no statute in Minnesota similar to our "guest statute" (sec. 58a, ch. 95½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 85.064(1)]). As the courts take judicial notice of the enactments, they necessarily take judicial notice of the possible fields of legislation where there are no enactments. We proceed, therefore, on the basis that there is no so-called "guest statute" in Minnesota. Sections 48g–48n, ch. 51, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 107.123 (1)–107.123 (8)], approved July, 1939, provide that every court of this State shall take judicial notice of the common law and statutes of every State, territory and other jurisdiction of the United States, and that the court may inform itself of such laws in such manner as it may deem proper and may call upon counsel to aid it in obtaining such information; also that the determination of such laws shall be made by the court and not by the jury, and shall be reviewable. The latter statute is not applicable to the case at bar because it did not go into effect until after the trial of the case. We agree with the statement of defendant that in the absence of proof, it is presumed that the law of Minnesota is the common law as administered by the courts of this State. In this

case, no proof was made as to the common law of Minnesota. We must, therefore, view the case from the standpoint of the common law of Illinois prior to the enactment of the "guest statute." Under point three defendant also argues that plaintiff failed to prove negligence on the part of defendant and that the evidence, on the contrary, shows, as a matter of law, that plaintiff's injuries were the result of accident, for which the defendant is not responsible. Defendant states that negligence cannot be presumed from the mere happening of the accident; that plaintiff, together with defendant and his brother, had traveled 750 miles from Chicago to Kenora, and about 200 miles on the return trip when the accident occurred; that up to that time defendant had at all times operated the car with care, prudence and caution; that Ralph and plaintiff were so unconcerned with their personal safety and felt so secure in defendant's care that they took turns sleeping while enroute, and argues that to conclude that defendant, after traveling almost 1,000 miles and after driving with the utmost care and caution, would suddenly disregard the most fundamental principles of safety and drive his car with its passengers into certain danger and possible death, is difficult to believe. It is undisputed that the defendant lost control of the automobile and that the injuries resulted therefrom. As in our discussion of the evidence in connection with the wilful and wanton count, we are of the opinion that competent evidence was submitted to the jury which warranted them in finding that the defendant was guilty of negligence, and that such negligence was the proximate cause of the injury to plaintiff.

A third proposition discussed by defendant under his third point is that inasmuch as plaintiff sat beside defendant and acquiesced in all of defendant's acts in operating the automobile in question during all the trip up to and including the occurrence in question,

plaintiff is estopped from claiming that defendant's conduct was negligent, wilful or wanton, and that under the circumstances, plaintiff participated and was a party to such negligence, or wilful or wanton conduct, if any, and therefore, is not entitled to recover. Under this caption defendant points out that he had driven an automobile for 28 years and was considered a skilful and careful driver; that plaintiff had known him for about 4 years and had accompanied him on other occasions and knew him to be a careful and cautious driver; that the highway used going to Kenora and returning therefrom, near the village of Orr, Minnesota, where the accident happened, was as well known to plaintiff as to defendant; that the defendant was required to drive in darkness with headlights burning on the trip up, as well as on the return trip; that along the highway were numerous curves; that the mishap was caused because the car got out of control after the right wheels hit the loose sand on the right side of the highway on a curve, traveling at 50 or 60 miles an hour, and that under the circumstances, plaintiff, by his conduct, is estopped from complaining that defendant was negligent or wilful or wanton. Defendant insists that it was the duty of plaintiff to exercise due care for his own safety, and to warn the driver and even insist that the automobile be stopped so that he could get out, if defendant persisted in disregarding the warning. The evidence, viewed from plaintiff's standpoint, shows that he did warn the defendant. It also shows that up to within 15 minutes of the time of the accident, defendant drove in a careful manner, and that defendant was a skilled and experienced driver. The parties were well acquainted. There would be no reason for plaintiff to suppose that more than a word of caution was necessary. They were traveling at night in a wooded territory, and we believe it is unreasonable to argue that plaintiff should have insisted on leaving the car. Plaintiff points out that

the dash lights were off; that most experienced drivers and chauffeurs drive that way at night to save their eyes from strain, and that under the circumstances, defendant had the feel of the car and knew how much gas he was feeding it and was the only one who knew the exact appropriateness of his speed. Defendant also comments on the fact that plaintiff sat still for seven or eight seconds after he warned defendant and until the crash. Defendant's testimony was to the effect that the accident happened because of the blinding headlights. Plaintiff argues that if defendant's statement about the headlights is true, then he (defendant) drove the car in the face of blinding headlights without reducing the speed of the car, that the headlights themselves would constitute a warning of danger, and that his proceeding blindly along the road under the circumstances, was inexcusable. We cannot agree with the contention of defendant that plaintiff is estopped from claiming that defendant's conduct was negligent, wilful or wanton, nor can we agree with defendant that plaintiff participated in and was a party to the negligent or wilful or wanton conduct of defendant. The last proposition urged under this point is that when the evidence is considered with all reasonable inferences drawn therefrom, taken most favorable for the plaintiff, and there is a total failure to prove one or more necessary elements of the case, the motion to direct should be allowed. That statement is not challenged. We have found that there is competent evidence, which, taken with the reasonable inferences, warranted the jury in finding that plaintiff had proved the necessary elements of the case.

As a fourth point, defendant maintains that the court erred in denying his motion for a new trial. He insists that the verdict is contrary to the manifest weight of the evidence. Our view is that the case involved a decision on the facts, and that the verdict is supported by the evidence. Defendant also argues that the ver-

dict is excessive and the result of passion and prejudice. He states that plaintiff's actual damages were $300, and that although he was absent from his employment for 40 days, he sustained no loss in his earnings, inasmuch as none was shown by the evidence. He continued to work for the same company in the same capacity for one year after the accident. When he severed his connection with the American Air Lines, about a year after the accident, he did not do so because of the injury to his left eye. At the time of the trial he was gainfully employed with the Wright Aeronautical Corporation. At the time of the occurrence he was 32 years of age and was employed as an airplane mechanic. His occupation requires that he adjust delicate apparatus, and that he read micrometers, etc., where good eyesight is essential. An airplane mechanic's usefulness and efficiency is increased if he can pilot the planes in flight in order to discover disturbances in the mechanism and make tests under actual working conditions. Before the accident he was a licensed pilot. After the accident his license was revoked, because a licensed pilot is required to have good vision in both eyes. There is no useful vision in his left eye. With that eye he has the ability to see at approximately 2 feet what he should see at 200 feet, and there is absolutely no ability whatever to read. A physician testified that at the time of the trial the lid of the left eye was not open. The condition was described as "ptosis," which is defined as a drooping of the lid, plus a paralysis of the nerve. The physician also stated that a certain type of operation could be performed which would permit the lid to be lifted. The witness stated that it would be a "rather intricate operation," and that after the operation it would not be a "normal lid" and that the operation would not add any to the vision, but would improve the appearance. A consideration of the testimony convinces us that the damages awarded by the jury were not

excessive and that the determination of the damages was not influenced by passion or prejudice. Defendant then argues that plaintiff relied upon a count charging negligence and a count charging wilful and wanton misconduct, and that inasmuch as defendant, by motion, which was denied, at the conclusion of all the evidence, asked the court to withdraw from the consideration of the jury the wilful and wanton count, the general verdict for the plaintiff cannot stand unless the injury was the result of defendant's wilful and wanton misconduct. Subsequent to the filing of the reply brief, the defendant was granted leave to file a supplemental brief. Therein he cited the recent case of *Greene v. Noonan,* 372 Ill. 286. The opinion decides that where a complaint consists of several counts, one or more of which state a cause of action the gist of which is malice, with others based upon negligence only, and the verdict is general, without specifying the count on which it is based, the presumption is that the verdict is based upon the cause of action of which malice is the gist. In the instant case, the complaint contained two counts, one of which charged negligence and the other wilful and wanton misconduct. The verdict was general and did not specify the count on which it was based. The case cited is not applicable to the situation presented to us because here there was competent evidence to sustain the action of the jury in finding the defendant guilty under the count charging negligence and under the count charging wilful and wanton misconduct.

Defendant criticizes the action of the court in instructing the jury that "if you believe from the preponderance of the evidence under the instructions of the court that the plaintiff was on or about September 18, 1937, riding as a passenger in an automobile being driven by the defendant on a public highway in the State of Minnesota, and that the plaintiff was then and there and prior thereto in the exercise of ordinary

care for his own safety, and if you further believe from the preponderance of the evidence under the instructions of the court that the defendant negligently drove or controlled said automobile, and thereby caused said automobile to overturn and cause the plaintiff to sustain injuries, then you should find the defendant guilty." He states that the instruction did not confine the jury to consideration of the evidence as to the negligence charged in the complaint, and that it left the jury free to muster their own idea of what negligence was proved. He also insists that the instruction made it mandatory upon the jury to find the defendant guilty of wilful and wanton misconduct upon proof of simple negligence. Paragraph 5 of count 1 of the complaint charges that the defendant "then and there negligently and carelessly drove, operated, managed, controlled and maintained the said automobile, so that in consequence thereof the said automobile overturned as aforesaid." The instruction substantially followed the language of the complaint and was applicable to the facts. As to the criticism, that the instruction asks for a finding of "guilty" on proof of simple negligence and at the same time retains the wilful and wanton count in the complaint so as to preclude the defendant from instructing the jury to the effect that the negligence of the plaintiff bars the plaintiff from recovery, plaintiff points out that defendant was not precluded from instructing the jury to the effect that contributory negligence would bar the plaintiff's recovery, and that as a matter of fact such an instruction on behalf of defendant was given. We find that at the request of defendant the court gave instruction No. 9, which instructed the jury that "if you find from the evidence that the plaintiff, Robert Paul O'Neal, was a man of mature years, in the possession of all his faculties, and that at the time of the accident here in question he was riding in an automobile driven by the defendant, Michael Caffarello, in a careless, negligent and im-

proper manner, and that the said plaintiff had been riding in said automobile for a sufficient time prior to the said accident for him, in the exercise of ordinary prudence, to become aware that said automobile was being driven in a careless, negligent and improper manner, and if you further find that the said plaintiff failed to protect or to warn the said Michael Caffarello against the manner in which he, the said Michael Caffarello, was driving and operating the said automobile, and that such failure on the part of the said plaintiff caused or proximately contributed to cause the said accident, then the plaintiff cannot recover in this case and you should find the defendant not guilty." We agree with plaintiff that defendant was not harmed by the giving of plaintiff's instruction No. 1. Defendant contends that the court should have instructed the jury that "The law did not impose upon the defendant, while operating his automobile upon the public highway here in question, the duty of protecting other persons riding with him in his automobile against remote, unusual or extraordinary perils which could not be foreseen or guarded against or prevented by a degree of care consistent with the practical operation of his automobile. All that was required of him in that regard was the exercise of ordinary care in the operation of his machine and in looking out for and trying to avoid accidents and injury to other persons; and if you believe from the facts and circumstances proved and the evidence in this case that the accident in question was due to some remote, unusual or extraordinary circumstance or combination of circumstances which could not be foreseen or guarded against or prevented by an ordinary prudent man exercising ordinary and reasonable care for the safety of others, and if you believe from the evidence that the said defendant was at the time he approached the place in question and during all of said transaction in the exercise of ordinary care for the safety of others in the conduct and management of his automobile, there can

be no recovery against him in this case.'' We find that the substance of the instruction was given to the jury in defendant's given instructions Nos. 1, 6, 10 and 11. He also complains of the refusal of the court to give the following three instructions:

''You are instructed that if the plaintiff, Robert Paul O'Neal, appreciated or should have appreciated the dangers and risks of riding in the automobile driven by the defendant, Michael Caffarello, at the speed, in the nighttime here in question, and voluntarily continued to remain in the car without protest and without doing anything to caution or warn the driver, then he was negligent as a passenger, and if his negligence led to bringing about this accident, then he cannot recover in this case, even though the defendant was also negligent.

''You are instructed that the fact that the defendant, Michael Caffarello, was driving the autmobile and that the plaintiff herein had no control of the operation of the said automobile, did not relieve the said plaintiff from the necessity to use care for his own safety. By merely inviting him on the trip and ride here in question the defendant did not hereby guarantee the safety of the plaintiff, nor relieve the said plaintiff from all care for his own safety.

''It was the duty of the said plaintiff to observe the manner in which the car was being operated, including the rate of speed and the dangers incident thereto, and to keep a reasonably careful lookout. In case the said plaintiff did observe or ought to have observed that the car was not being operated with reasonable safety, it was his duty to protest, and if necessary, to have the car stopped.

''The plaintiff was negligent if, under the circumstances, you find from the evidence he so acted or so omitted to take precaution for his own safety that he ought reasonably to have foreseen that some injury to himself might probably result from his conduct.

"If from the evidence and under the instructions of the court, you find that the plaintiff voluntarily consented to be a passenger in the defendant's car after he knew or ought to have known that the defendant persisted in driving the same, at the time and place here in question, at a high and dangerous rate of speed, if any, after the plaintiff had asked the defendant to take it easy, if he did, and that such voluntary exposure, if any, resulted in the occurrence here in question, then the plaintiff is not entitled to recover." Plaintiff calls our attention to the fact that these instructions ignore the wilful and wanton count. Refused instruction No. 3 is virtually a repetition of defendant's given instruction No. 9 and refused instruction No. 4 is a repetition of defendant's given instructions Nos. 9 and 10. Instruction No. 9 has been heretofore quoted. Instruction No. 10 told the jury that "In this case the defendant is not an insurer of the safety of the plaintiff while the plaintiff was riding in the autmobile here in question. The only duty that the defendant owed to the plaintiff was the duty to exercise that degree of care and caution in the operation and control of his automobile that an ordinary prudent person would have used under the same circumstances appearing in evidence in this case." Defendant's refused instruction No. 5, in effect, told the jury that if they believed the testimony from the viewpoint of the plaintiff, that it was the duty of the plaintiff to leave the car before the accident. Under another point, we stated that we did not conceive it to be the duty of plaintiff to leave the car under the circumstances shown by the evidence. Furthermore, we are of the opinion that the instruction invades the province of the jury by stating what acts or omissions on the part of plaintiff would constitute contributory negligence. Finally, defendant insists that it was the duty of the court to instruct the jury that "if you believe from the evidence that the plaintiff and the defendant were both guilty of negligence which proximately contributed to

the injury or damage complained of, then you are instructed that you have no right to compare the negligence of the plaintiff with that of the defendant, and find a verdict according to which side you think was guilty of the greater degree of negligence, for in such case it is the law that it makes no difference which was guilty of the greater degree of negligence. Under such circumstances, the plaintiff cannot recover." The instruction is not applicable to the facts in the instant case. Moreover, the substance of the instruction was covered in defendant's given instruction No. 9, which directed the jury to find the defendant not guilty if the plaintiff was guilty of any negligence contributing to the injury.

A careful reading of all of the instructions convinces us that the jury was fully and fairly instructed as to the law applicable to the case.

For the reasons stated, the judgment of the circuit court of Cook county should be and it is affirmed.

*Judgment affirmed.*

Denis E. Sullivan, P. J., and Hebel, J., concur.