ROBERT BELL v. CHARLES K. MAXWELL AND JAMES B. HAMMOND.

(Filed 22 May, 1957.)

**1. Negligence § 11—**

Contributory negligence presupposes negligence on the part of defendant.

**2. Negligence § 19c—**

Nonsuit on the ground of contributory negligence is proper only if plaintiff's own evidence establishes facts sufficient to show contributory negligence on his part so clearly that no other conclusion may be reasonably drawn therefrom.

**3. Trial § 22b—**

On motion to nonsuit, defendant's evidence may be considered in so far as it is favorable to plaintiff or tends to clarify or explain plaintiff's evidence, but defendant's evidence which is inconsistent with or tends to establish another and different state of facts or which tends to contradict or impeach plaintiff's evidence is not to be considered.

**4. Negligence § 19c—**

If different inferences may be drawn on the issue of contributory negligence from plaintiff's own evidence, some favorable to plaintiff and others to the defendant, the issue is for the jury to determine, since contradictions and discrepancies in the evidence are for the jury to resolve.

**5. Automobiles § 49—**

Whether a passenger in a car is guilty of contributory negligence as a matter of law in continuing to ride in a car driven at excessive speed and in a reckless manner must be determined upon the facts and circumstances of each case.

**6. Same—**

A passenger in a car is required to exercise for his own safety that care which a reasonably prudent person would employ under the same or similar circumstances.

9—246

**7. Negligence § 11—**

Plaintiff's contributory negligence suffices to bar recovery if it contributes to his injury as a proximate cause or one of them.

**8. Automobiles § 49—Evidence held not to show as matter of law contributory negligence of passenger in resuming trip after assurance that driver would not continue to drive recklessly.**

Plaintiff's evidence tended to show that he was riding as a passenger in a car driven by one defendant, with the encouragement or acquiescence of defendant owner, who was also a passenger in the car, and that plaintiff was injured in a wreck resulting from the excessive speed and reckless manner in which it was driven. Plaintiff's testimony and testimony elicited from defendant's witness on cross-examination tended to show further that plaintiff repeatedly remonstrated in regard to the speed, got out of the car on account of it, and resumed his status as a passenger only after being assured that the "horse-playing" or speeding was over. *Held:* Taking plaintiff's evidence as true and giving him every reasonable inference to be drawn therefrom and considering so much of defendant's evidence as is favorable to plaintiff, conflicting inferences may be drawn from the facts as to whether plaintiff measured up to the standard of care required of him for his own safety, and therefore nonsuit on the ground of contributory negligence was improperly entered.

BOBBITT, J., concurring in result.

APPEAL by plaintiff from *Rudisill, J.,* 1 October 1956 Civil B Term of MECKLENBURG.

Civil action for damages for personal injuries resulting from the overturning of an automobile owned by the defendant James B. Hammond and driven by the defendant Charles K. Maxwell at the request of the owner, who was riding in the automobile.

From a judgment of involuntary nonsuit entered at the close of all the evidence, plaintiff appeals.

*Carswell & Justice and J. Edward Stukes for Plaintiff, Appellant.*
*Carpenter & Webb for Defendants, Appellees.*

PARKER, J. Plaintiff was severely injured by the overturning of a practically new Lincoln Capri automobile owned by the defendant James B. Hammond and driven by the defendant Charles K. Maxwell. The defendants filed a joint answer in which they admitted that at the time Maxwell was· driving the automobile with the permission and at the request of Hammond, who was present in the automobile before and at the time it overturned.

Plaintiff's evidence tends to show these facts: After midnight on 13 September 1953 Fred Teeter, a police officer of the city of Charlotte, went to the intersection of Harris and Providence Roads within the city

limits. He saw Hammond's Lincoln automobile lying on its side on the right hand side of Providence Road coming into the city. He testified: "It was off the hard-surface down a bank, a ditch; the skidmarks with reference to the car were on the paved street, paved surface of Providence Road, and skidmarks in the grass as it came off of the road too, skidmarks scraping across the road and grass; the skidmarks were toward the city limits out of town; that would be east of where the automobile was lying." He saw plaintiff lying on his back unconscious out from the automobile.

Teeter talked with Maxwell going to the hospital and at the Police Station. In his opinion, Maxwell was not intoxicated. This is the substance of what Maxwell told him: They were all in Hammond's automobile and went out Providence Road, where there was some fast driving encouraged by Hammond. Zeke Johnson and plaintiff got out of the automobile on Providence Road a few miles beyond the city limits. He told Johnson and plaintiff to get back in the automobile, the horse playing or speeding was over, and they would go back into town to the Stork Drive-In or somewhere. Plaintiff got back in the automobile, Johnson did not. The automobile had been stopped twice before it overturned. The automobile had been stopped when Johnson got out. He was going 85 miles an hour at the time he first noticed danger which was 100 yards before the impact. At the time of the impact he was going 65 miles an hour. At the time the car overturned he was driving it, Hammond and plaintiff were in the front seat with him, and one Ligon on the back seat. On cross-examination Teeter said he found beer cans around the car.

Plaintiff testified that the last thing he remembered that night was leaving home around 8:30 p.m., and the next time he remembered anything was about three weeks later in the hospital. He and Maxwell had been at the University at the same time. Plaintiff graduated at the University of North Carolina in 1953, and at the time of his injuries was 22 years of age.

Defendants pleaded contributory negligence of the plaintiff as a defense, and in such defense alleged that Hammond's Lincoln automobile was being driven on Providence Road near the point of overturning at a speed in excess of 100 miles an hour, and was being driven at a speed in excess of 80 miles an hour at the time it overturned.

At the close of plaintiff's evidence the court denied a motion for judgment of nonsuit. Whereupon, the defendants called one witness, Zeke Johnson. His testimony tends to show the following facts: About 8:00 o'clock that night he, with Stan Ligon, went to the Stork Drive-In in his car. Plaintiff and Dave Allen joined him there, and later the defendants joined the party. He and plaintiff were drinking beer. He stayed at the Stork Drive-In one or two hours, and then went to

the Panda Grille four or five miles from the Stork Drive-In. There he met again plaintiff and Allen and Ligon and the two defendants. At the Panda Grille he, plaintiff and Maxwell drank some beer. When the Panda Grille quit serving beer he left the Panda Grille in his car, and plaintiff left at the same time in Maxwell's car. He next saw plaintiff and Maxwell at the Stork Drive-In about midnight. He saw Maxwell's car at the Stork Drive-In. Plaintiff was driving it, and the muffler had been knocked loose. When they arrived, the Stork Drive-In was closed. He, plaintiff, Ligon and the two defendants left in Maxwell's car with plaintiff driving it. He didn't remember where they were going, but while riding the car ran off the curbing one time. They went to Maxwell's home, and changed cars. They left there in Hammond's 1953 Lincoln Capri with plaintiff driving, and went out Providence Road to the Ming Tree Restaurant. There Maxwell took over the driving of the Lincoln car. Plaintiff was on the front seat, Hammond on the front seat between plaintiff and Maxwell, and he and Ligon on the back seat. Maxwell drove through the park, through town into Queens Road, and came back to Providence Road. Maxwell drove through the intersection of Queens and Providence Roads within the city limits at a speed between 80 and 90 miles an hour. The car was stopped in front of the Myers Park Presbyterian Church. There plaintiff got out of the car, but got back in it. Maxwell then drove the car out on Providence Road a distance of 2½ to 3 miles beyond the city limits at a speed of over 100 miles an hour. Maxwell then turned the car around and started back to the city. He argued with Maxwell to slow down and not drive fast. Maxwell did not slow down, though he did not know what speed Maxwell was driving. He asked plaintiff to grab the steering wheel and slug Maxwell. Plaintiff refused, saying they were going too fast and would surely have a wreck if they did anything like that. Johnson testified: "I got Maxwell to stop by choking him. I got out of the car as it stopped. I got out of the car. The car, I think, was either at a standstill or barely moving but it was slow enough for me to get out. The car was going slow enough for me to get out."

On cross-examination this in substance is his testimony: The Lincoln car belonged to Hammond. Plaintiff asked Maxwell to stop the car, and he did in front of Myers Park Presbyterian Church. Plaintiff got out, saying he was not going to ride with him at any such speed. Maxwell said he wouldn't drive fast anymore, and plaintiff got back in the car. Maxwell began to drive fast again. He, plaintiff and Ligon told Maxwell a number of times to slow down, but Hammond did not tell him to slow down.

This is in substance his testimony on re-direct examination. When they stopped at the Ming Tree Restaurant, Hammond said if there was

going to be any fast driving, he wanted Maxwell to do it. Maxwell said he would drive. Plaintiff said he wouldn't ride fast in the car. Maxwell said he would not do it, and all got in the car. When they left the Panda Grille the last time, he drove his car up behind the car Maxwell was driving, in which plaintiff was riding, and bumped it at a speed of around 70 miles an hour.

At the close of all the evidence the court allowed defendants' motion for judgment of nonsuit, and the plaintiff excepted and assigns this as error.

The evidence of the greatly excessive speed at which Maxwell was driving the Lincoln Capri automobile, which belonged to Hammond, in violation of the Speed Restrictions of G.S. 20-141, and of reckless driving of this automobile by Maxwell in violation of G.S. 20-140, and the evidence that Hammond was encouraging the fast driving, and the admissions in the joint answer that at the time Maxwell was driving Hammond's Lincoln automobile with the permission and at the request of Hammond, who was present in his automobile before and at the time it overturned, is sufficient to make out a case of actionable negligence against both defendants. The defendants in their brief make' no contention that the evidence does not make out a case of actionable negligence against both of them. Their contention is that plaintiff was properly nonsuited by virtue of his contributory negligence.

Contributory negligence implies or presupposes negligence on the part of the defendant. *Garrenton v. Maryland,* 243 N.C. 614, 91 S.E. 2d 596.

The defendants have pleaded contributory negligence as a defense. The question presented is this: Does the plaintiff's own evidence establish the facts necessary to show contributory negligence on his part so clearly that no other conclusion may be reasonably drawn therefrom? If so, the judgment of nonsuit below should be affirmed, if not, reversed. *Mallette v. Cleaners, Inc.,* 245 N.C. 652, 97 S.E. 2d 245; *Blevins v. France,* 244 N.C. 334, 93 S.E. 2d 549; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307. On this question the parties join battle.

This Court said in *Bundy v. Powell, supra:* "In ruling upon a motion for an involuntary judgment of nonsuit under the statute after all the evidence on both sides is in, the court may consider so much of the defendant's testimony as is favorable to the plaintiff or tends to clarify or explain evidence offered by the plaintiff not inconsistent therewith; but it must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by the plaintiff."

"Discrepancies and contradictions, even in plaintiff's evidence, are for the twelve and not for the court." *Barlow v. Bus Lines,* 229 N.C. 382, 49 S.E. 2d 793. If different inferences may be drawn from the

evidence on the issue of contributory negligence, some favorable to plaintiff and others to the defendant, it is a case for the jury to determine. *Gilreath v. Silverman,* 245 N.C. 51, 95 S.E. 2d 107. To sustain a nonsuit on the ground of contributory negligence, the plaintiff must have proved himself out of court. *Barlow v. Bus Lines, supra; Phillips v. Nessmith,* 226 N.C. 173, 37 S.E. 2d 178; *Lincoln v. R. R.,* 207 N.C. 787, 178 S.E. 601.

The question of contributory negligence of a gratuitous passenger in a privately owned and operated automobile has been considered by this Court in a number of cases. In *Samuels v. Bowers,* 232 N.C. 149, 59 S.E. 2d 787, the Court said:

> "The principle is generally recognized that when a gratuitous passenger becomes aware that the automobile in which he is riding is being persistently driven at an excessive and dangerous speed, the duty devolves upon him in the exercise of due care for his own safety to caution the driver, and, if his warning is disregarded and speed unaltered, to request that the automobile be stopped and he be permitted to leave the car. *Bogen v. Bogen, supra;* 4 Blashfield Cyc. Auto Law, sec. 2415; 5 Am. Jur. 772. He may not acquiesce in a continued course of negligent conduct on the part of the driver and then claim damages from him for injury proximately resulting therefrom. But this duty is not absolute and is dependent on circumstances. 4 Blashfield, pg. 568; *O'Neal v. Caffarello,* 303 Ill. App. 574. Where conflicting inferences may be drawn from the circumstances, whether the failure of the passenger to avail himself of opportunity for affirmative action for his own safety should constitute contributory negligence is a matter for the jury.

> "In 4 Blashfield, pg. 578, the law on this point is stated as follows: 'Even so, however, it is not the duty of a guest, under all circumstances of negligent or reckless driving, to ask to be let out, nor is it necessarily contributory negligence as a matter of law for a passenger not to insist upon being permitted to leave an automobile driven at excessive speed. . . . A guest who feels himself endangered by the excessive speed of the vehicle cannot ordinarily be expected to leap from the car while it is still in rapid motion. . . . And even if there is a reasonable opportunity to leave the car, failure to leave is not negligence unless a person in the exercise of ordinary care would have done so under the circumstances.' "

*Nettles v. Rea,* 200 N.C. 44, 156 S.E. 159, was an action to recover damages for personal injuries tried upon the issues of negligence, contributory negligence and damages, which resulted in a verdict and judgment for the plaintiff. Plaintiff's evidence tended to show—the

defendant offered none—that defendant invited plaintiff and two young ladies to go with him from Sylva to Asheville, a distance of between 50 and 60 miles in his new Chrysler automobile. Defendant had driven from Asheville that morning in 50 minutes, and said he intended to drive back in 30 minutes. He had taken at least 2 drinks during the day, which plaintiff knew as he had been drinking with him. Defendant showed no signs of intoxication at the time they left Sylva. The road was crooked and rough with numerous curves. Defendant was driving 70 and 80 miles an hour. Defendant wouldn't listen to his passengers, but said he could drive all right. Defendant approached a curve at about 70 miles an hour, so fast he could not make it, ran over an embankment, and turned over. The Court said:

> "Conceding, without deciding, that plaintiff may have been negligent in entering defendant's car under the circumstances disclosed by the record, nevertheless there is evidence of wilful or wanton conduct on the part of the defendant in persisting in his reckless driving over the protests of his guests which resulted in plaintiff's injury. This, if nothing else, saves the case from a nonsuit. Notes, N. C. Law Review, December, 1930, p. 98; 61 A.L.R., 1253; 1 R.C.L. Sup., 674. See, also, *Teasley v. Burwell*, 199 N.C. 18, 153 S.E. 607; *Albritton v. Hill*, 190 N.C. 429, 130 S.E. 5."

In the following cases where there was evidence of excessive speed, the question of whether a guest passenger was guilty of contributory negligence was held properly submitted to the jury for determination: *King v. Pope*, 202 N.C. 554, 163 S.E. 447; *Taylor v. Caudle*, 210 N.C. 60, 185 S.E. 446. In the following cases of a guest passenger, where there was evidence of excessive speed, no issue of contributory negligence was submitted to the jury, and this Court found no error in the trial: *Norfleet v. Hall*, 204 N.C. 573, 169 S.E. 143; *York v. York*, 212 N.C. 695, 194 S.E. 486. In *Mason v. Johnston*, 215 N.C. 95, 1 S.E. 2d 379, plaintiff was guest passenger on a motorcycle driven at a high rate of speed without protest. The Court ordered a new trial holding that it was error for the trial court to refuse to submit the issue of contributory negligence to the jury. In *Groome v. Davis*, 215 N.C. 510, 2 S.E. 2d 771, it was held the failure of a guest passenger in an automobile driven 65 to 70 miles an hour to remonstrate would not constitute contributory negligence as a matter of law but was a question for the jury, and a judgment of nonsuit below was reversed. In *Dosher v. Hunt*, 243 N.C. 247, 90 S.E. 2d 374, it was held that where there is evidence that a guest in an automobile saw the taillights of a vehicle travelling along the highway in front, but no evidence of anything which should have put her on notice that the driver of the automobile had not seen

the preceding vehicle, her failure to warn the driver until it was too late for him to avoid a collision with the rear of the vehicle is not contributory negligence on her part as a matter of law. See, also, *Hill v. Lopez,* 228 N.C. 433, 45 S.E. 2d 539, where it was held that a guest passenger was not guilty of contributory negligence as a matter of law.

In *Bogen v. Bogen,* 220 N.C. 648, 18 S.E. 2d 162, which is cited and relied upon by the defendants, a guest passenger in an automobile was held barred from recovery of damages for personal injuries as a matter of law. That case is distinguishable from the instant case in that the defendant in the *Bogen Case* did not tell his wife, the plaintiff, to get back in the car his reckless driving and excessive speeding was over.

Whether or not the conduct of the plaintiff constituted contributory negligence must be determined from the facts and circumstances of the instant case. Plaintiff's evidence tends to show that Maxwell was drinking beer, but was not intoxicated. Plaintiff testified on direct examination:

> "Yes, I had known King Maxwell before this time. He had been to school when I was at school at the University. I think I have ridden back from college with him. He had always been a sane driver. By that, I mean normal. While I was with him, I don't recall his having had any trouble with his driving before except in an old green '46 Dodge he had that wouldn't go very fast. He always complained about it going slow at lights in town—people blowing the horn at him."

Except on the night plaintiff was injured, there is no evidence that Maxwell was a reckless and extremely fast driver, nor is there any evidence that he bore a reputation as such. The automobile was a practically new Lincoln Capri, and there is no evidence of inclement weather conditions.

It is well settled law in this jurisdiction that the court may consider so much of the defendants' evidence as is favorable to the plaintiff. *Bundy v. Powell, supra.* On cross-examination Zeke Johnson, defendants' sole witness, said:

> "Bobby Bell asked Maxwell to stop the car when it was stopped about in front of the Myers Park Presbyterian Church and that was after it had been running ninety miles an hour after it had crossed that intersection at the Methodist Church where Providence Road and Myers Park Road touch each other. And Bell told him that he was not going to ride with him at any such speed as that. Then Maxwell said he wouldn't drive fast any more and it was after that that Bobby Bell got back in the car, and then King Maxwell began to drive fast again. I don't know the num-

ber of times that Bobby Bell told him to slow down and not drive so fast after he got back in the car."

Plaintiff's evidence shows that Maxwell made this statement to Teeter, the police officer:

> "King Maxwell stated to me that they were all in the automobile; they went out Providence Road and that there was some fast driving, encouraged by Mr. Hammond, and that Zeke Johnson and Bobby Bell got out of the automobile out Providence Road a few miles beyond the City limits and that Bell got back in the automobile and Johnson refused to get back in the automobile. With reference to what King Maxwell told me he said to Bell about getting back in the car, he said that he told Johnson and Bell to get back in the automobile, the horse-playing was over or the speeding of the automobile was over and they would go back into town, I believé to the Stork Drive-In or somewhere; that is the way I understood it. After that he said Bell got back in the automobile."

"The passenger is required to use that care for his own safety that a reasonably prudent person would employ under same or similar circumstances." *Samuels v. Bowers, supra.* A plaintiff's negligence suffices to bar recovery, if it contributes to his injury as a proximate cause, or one of them. *Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396.

When plaintiff got back into the automobile on Providence Road to continue riding in it, after Maxwell had told Zeke Johnson and himself "the horse-playing was over or the speeding of the automobile was over, and they would go back into town," and rode in it until it overturned, did he, considering the facts and circumstances of the case, measure up to the standard of care required of him for his own safety?

Taking the plaintiff's evidence as true and giving to him every reasonable inference legitimately to be drawn therefrom, as we are required to do in passing on a judgment of nonsuit (*Polansky v. Insurance Asso.,* 238 N.C. 427, 78 S.E. 2d 213), and considering so much of defendants' evidence as is favorable to him, we are of opinion that conflicting inferences may be drawn from the facts as to whether plaintiff measured up to the standard of care required of him for his own safety, and that the question of whether or not plaintiff is guilty of contributory negligence is a matter for the jury. *Gilreath v. Silverman, supra; Samuels v. Bowers, supra.*

This is a close case, but it seems to us that plaintiff's own evidence does not establish the facts necessary to show contributory negligence on his part so clearly that no other conclusion can be reasonably drawn therefrom.

The judgment of nonsuit entered below is
Reversed.

BOBBITT, J., concurring in result: In my opinion, the testimony of Johnson, defendants' witness, that on Providence Road, outside the city limits, he forced the driver of the Lincoln to stop the car, and that *he* then got out but plaintiff didn't, is *new matter,* appearing only in the defendants' evidence. This evidence, in my view, does more than make clear or explain the evidence offered by the plaintiff, and should not be considered in passing on defendants' motion for judgment of involuntary nonsuit. With this explanation, I concur in the result.