HUGH DINKINS, ADMINISTRATOR OF THE ESTATE OF JAMES LLOYD CRANFILL, v. WILLIAM GRADY CARLTON
AND
JAMES WESLEY WILLIAMS, BY HIS NEXT FRIEND, BETTY WILLIAMS, v. WILLIAM GRADY CARLTON.

(Filed 16 June, 1961.)

1. **Automobiles § 49—**

    A passenger is required to exercise the care of an ordinarily prudent man for his own safety and he may be held contributorily negligent in voluntarily riding with a driver whom he knows to be reckless, or in failing to abandon the trip after he ascertains that the driver is intoxicated or driving in a reckless manner, when an ordinarily prudent person, under similar circumstances, would not have voluntarily undertaken the trip or would have abandoned the trip after the discovery of the recklessness of the driver.

DINKINS *v.* CARLTON AND WILLIAMS *v.* CARLTON.

2. **Same—**

Whether a passenger is guilty of contributory negligence in failing to remonstrate with the driver in regard to the driver's excessive speed or reckless driving must be determined upon the facts of each particular case, with consideration as to whether under the attendant circumstances remonstrance would seem to be futile and also with consideration of the fact within common knowledge that "back seat driving" often confuses the driver and that physical interference with the driver would increase the hazard.

3. **Same—**

Whether a passenger is guilty of contributory negligence in voluntarily embarking on a trip with a driver whom he knows to be reckless, or in failing to abandon the trip after discovery that the driver was operating the vehicle in a reckless manner or while intoxicated, or in failing to remonstrate with the driver, is usually a question for the jury under the rule of the ordinary prudent man, and the conduct of the passenger in these respects will not ordinarily be held for contributory negligence as a matter of law.

4. **Trial § 22—**

Discrepancies and contradictions, even in plaintiff's evidence, do not justify nonsuit.

5. **Negligence § 26—**

Nonsuit for contributory negligence is proper only when plaintiff's evidence, considered in the light most favorable to him, establishes contributory negligence as a proximate cause of the injury so clearly that no other reasonable conclusion can be drawn therefrom.

6. **Automobiles § 49— Evidence held not to disclose contributory negligence as matter of law on part of passenger in failing to abandon trip.**

The evidence tended to show that the 29 year old defendant had drunk some intoxicant, that three teenage boys, at about 3:30 a.m., accepted his invitation to go to a neighboring town under agreement that one of the boys would drive the car, that en route defendant objected to the slowness of the driver and the car was stopped in a church yard and defendant took control of the car, that defendant drove "all right" at first but then began to drive at excessive speed along the narrow and curving road, and twice permitted the wheels to run off the edge of the hard surface, and that some three or five miles after taking over the wheel, the car ran off the highway and turned over, resulting in the injuries in suit. There was no evidence that defendant had the reputation of a reckless driver or that any of the passengers had theretofore ridden with him, and no evidence that the passengers objected to his taking over the driver's seat or that they remonstrated with him as to his manner of driving. *Held:* While the evidence is sufficient to require the submission to the jury of the issues of the passengers' contributory negligence, the evidence does not disclose contributory negligence on their part as a matter of law.

APPEALS by defendant from *Johnston, J.,* December 14, 1960, Term, of YADKIN.

On June 13, 1959, about 4:00 a.m., a 1950 Chevrolet, owned and operated by defendant, in which James Lloyd Cranfill and James Wesley Williams were passengers, ran off the road and overturned. Cranfill and Williams were injured. Cranfill's injuries caused his death.

Joe Gray Williams, older brother of James Wesley Williams, was also a passenger. Injuries, if any, received by him, are not involved in these actions. Hereafter, James Wesley Williams is referred to as "Williams," James Lloyd Cranfill is referred to an "Cranfill," and Joe Gray Williams is referred to as "Joe Williams."

These actions, one for the wrongful death of Cranfill and the other for Williams' injuries, were consolidated, by consent, for trial. The complaints contained substantially the same allegations as to defendant's actionable negligence. Defendant, answering, denied he was negligent and pleaded the contributory negligence of Cranfill and Williams.

The only evidence was that offered by plaintiff. Relevant portions thereof will be set forth in the opinion.

In each case, the jury answered the issues of negligence and contributory negligence in favor of plaintiffs and awarded damages. Judgments, in accordance with the verdicts, were entered. Defendant, in each case, excepted and appealed.

*H. Smith Williams and R. Lewis Alexander for plaintiffs, appellees.*
*Walter Zachary and Womble, Carlyle, Sandridge & Rice for defendant, appellant.*

BOBBITT, J. The only assignments of error are based on defendant's exceptions to the overruling of his motions for judgment of nonsuit.

There was plenary evidence as to defendant's actionable negligence. While defendant, in his answers, denied plaintiffs' allegations as to his negligence, he now asserts the evidence discloses he was so incapacitated or reckless by reason of intoxication that Cranfill and Williams were contributorily negligent as a matter of law in riding with him when they knew or should have known it was hazardous to do so.

Defendant, in his brief, states this one question is presented, *viz:* "Did the trial Court err in overruling defendant's motion for judgment of nonsuit on the grounds that plaintiff's intestate and the plaintiff Williams were guilty of contributory negligence as a matter of

law in continuing to ride with the defendant after acquiring knowledge of defendant's intoxication?"

Pertinent general principles have been stated as follows: "A passenger or guest has a right to assume that the driver of the automobile will exercise proper care and caution, until he has notice to the contrary. His acceptance of the driver's manner of operating the vehicle ordinarily is not contributory negligence unless the driver's fault or incompetence is so obvious as to demand effort on the passenger's part to abate danger." 5A Am. Jur., Automobiles and Highway Traffic § 789. Again: "One who rides in an automobile driven by another whom he knows or should known *(sic)* to be a careless or reckless driver . . . is guilty of contributory negligence such as will preclude his recovery if his conduct in voluntarily riding with the driver amounts to a failure to exercise reasonable or ordinary care for his own safety. . . . Mere knowledge on the part of the passenger of reckless driving by the operator of the car does not *ipso facto* charge him with contributory negligence or bar his recovery, if he used the degree of care that an ordinarily prudent man would have used under like or similar circumstances." 5A Am. Jur., Automobiles and Highway Traffic § 790. Again: "While the mere circumstance of having entered an automobile driven by an intoxicated person is not of itself determinative of the passenger's contributory negligence, if one enters a car with knowledge of the driver's intoxicated condition and thereafter rides with him under such conditions as would impel a reasonably prudent man to take all possible measures to stop or leave the vehicle, he may be found guilty of contributory negligence and barred from recovery against the driver or owner of the car." 5A Am. Jur., Automobiles and Highway Traffic § 792.

Our decisions, cited and reviewed by *Parker, J.,* in *Bell v. Maxwell,* 246 N.C. 257, 98 S.E. 2d 33, are in substantial accord. In all, except *Bogen v. Bogen,* 220 N.C. 648, 18 S.E. 2d 162, this Court held the issue, whether the guest passenger was guilty of contributory negligence, was for jury determination.

As stated by *Devin, J.* (later *C.J.*), in *Samuels v. Bowers,* 232 N.C. 149, 153, 59 S.E. 2d 787: "The passenger is required to use that care for his own safety that a reasonably prudent person would employ under same or similar circumstances. Whether he has measured up to this standard is ordinarily a question for the jury. Contributory negligence when interposed as a defense to an action for damages for personal injury involves the element of proximate cause, and the determination of the proximate cause of an injury from conflicting inferences is a matter for the jury." In 5 Am. Jur., Automobiles § 712, it is stated: "The duty of an invited passenger in an automobile is

so dependent upon special circumstances, and upon such varied and conflicting notions of the propriety of interference in the management of the automobile, that in cases of accident the courts are loath to hold such a passenger guilty of contributory negligence as a matter of law. Ordinarily, the question of the contributory negligence of a guest in an automobile involved in a collision, is for the jury to decide in the light of all the surrounding facts and circumstances."

In *Bogen v. Bogen, supra,* where a guest passenger was held contributorily negligent as a matter of law, the opinion of *Barnhill, J.* (later *C.J.*), contains this statement as to the factual situation under consideration: "Here, plaintiff became a guest upon the automobile of defendant, knowing at the time that he habitually drives in a reckless manner at a high rate of speed without keeping a proper lookout and that he would ignore any protest or remonstrance she might make, and then failed to abandon the journey and return home on any one of the numerous occasions she had opportunity so to do after his continued recklessness became apparent." Plaintiff's testimony unequivocally and fully supported this statement.

The evidence must be considered in the light of these two well-settled principles: 1. Discrepancies and contradictions in the evidence, even though such occur in the evidence offered in behalf of plaintiff, are to be resolved by the jury, not by the court. *Cozart v. Hudson,* 239 N.C. 279, 78 S.E. 2d 881; *Bell v. Maxwell, supra.* 2. "(I)nvoluntary nonsuit on the ground of the contributory negligence of the plaintiff may be allowed only when the plaintiff's evidence, considered in the light most favorable for him, establishes his own negligence as a proximate contributing cause of the injury so clearly that no other conclusion reasonably can be drawn therefrom." *Samuels v. Bowers, supra.*

The evidence tends to show the facts narrated below.

When the mishap occurred, defendant, then 29, was driving. Williams, then 16, was on the front seat, to the driver's right. Cranfill, then 17, and Joe Williams, then 18 or 19, were on the back seat. All were friends. They were on their way from Yadkinville to the "Night Spot" in Jonesville.

The tar and gravel road on which they were traveling, known as Center Road, was "right narrow" and had "a lot of curves." At a curve, the car "went off on the right side" and "started sliding and slid about 200 feet" before turning over. Williams and Cranfill were thrown out of the car.

Joe Williams had "just finished high school" and had a job in Yadkinville at the Yadkin Cafe. Williams had just completed the

tenth grade and was unemployed. Cranfill was "in the eleventh grade." There is no evidence as to defendant's education or occupation.

The Williams boys lived with their parents at Pilot View, about three miles from Yadkinville. Each had a driver's license. Williams had gotten his driver's license "about two weeks before the accident."

Joe Williams went to work at the Yadkin Cafe about 12:00 o'clock (midnight) and got off around 3:00 a.m. He had driven to work in his father's car. When he got off work, he started home. He drove his father's car around the block and stopped in front of the Yadkin Cafe. Williams and Cranfill were in Yadkinville, waiting for Joe Williams "to get off work." Until he got off work and had started home, Joe Williams had not seen defendant.

When Joe Williams stopped, Williams and Cranfill started to get in the Williams car. At that time, defendant pulled up behind the Williams car. Williams went back to see what defendant wanted. Defendant asked if "they" wanted to go to the "Night Spot" in Jonesville. Williams asked defendant who was going to drive. Defendant replied: "I don't care; you can if you want to." The Williams boys and Cranfill conferred and decided to go to Jonesville in defendant's car. Joe Williams parked his father's car in Yadkinville. When they left Yadkinville in defendant's car, about 3:30 a.m., Williams was driving. Defendant was on the front seat, to the driver's right. Cranfill was on the back seat, left side, and Joe Williams was on the back seat, right side.

Williams drove defendant's car until they reached Mitchell Chapel Church, some four to six miles from Yadkinville and some six to eight miles from Jonesville. Williams drove into the churchyard and stopped. He did so because defendant told him "to pull over and let him drive." Williams had been driving at 40 to 45 miles an hour. Defendant had complained that Williams was not driving fast enough. Defendant had told Williams "to press the accelerator down." He "would press it down but then take (his) foot off." The reason defendant gave for telling Williams to stop was this: "I want to show you how to drive."

In the churchyard, Williams got out of the car, defendant moved over into the driver's seat and Williams walked around the car and got back in on the front seat, to the right of the driver. Cranfill and Joe Williams did not change their positions. Defendant started driving. He had driven somewhere between two and five miles (wide variation in estimates) before the mishap occurred.

Defendant "drove all right at first." He kept on increasing his speed until he got up to 60 miles an hour or more. Before the mishap occurred, defendant had run off the road twice. Williams testified: "When

I say that Grady got off the road twice, I just mean he ran off the edge of the road. The wheels were off the hard surface, on the shoulder. He just ran the car off the road and cut it back on." When these two incidents occurred, defendant slowed down but picked up speed again.

At the churchyard, neither the Williams boys nor Cranfill expressed any objection to defendant's decision that he would drive from there to Jonesville. While defendant was driving, neither of the Williams boys nor Cranfill told defendant to slow down or otherwise objected to the way he was driving. Williams testified he did not make any objections to Grady's driving "because it wasn't my car." Joe Williams testified: "It was his (defendant's) car. What could we do about it?"

The evidence relating to defendant's intoxication is narrated below.

Williams testified he had seen defendant in Yadkinville, at a "closed" filling station, between 12:00 o'clock (midnight) and 1:00 a.m.; that he and Cranfill, at that time, got into defendant's car but "did not go anywhere"; that he then "smelled alcohol on (defendant)"; that he did not see defendant drink any liquor or know where defendant had got liquor; that defendant left about 1:00 a.m.; that he did not know where defendant went; and that he did not see defendant again until around 3.30 a.m.

An investigating State Highway Patrolman testified to a conversation he had with defendant at the hospital in Elkin about 5:30 a.m. He testified: "It was obvious to me when I talked to Grady Carlton that morning at around 5:30 A.M. that he had been drinking, as the odor was on him. The odor on him was clear. You could tell clearly that he had been drinking. He said he had been drinking earlier in the night but was not intoxicated when he wrecked." Again: "He stated that he had been out all night but not with these boys. He said that he had been drinking some beer at a tavern or a joint in Forsyth County, but he was not intoxicated at the time of the accident. However, it was obvious to me that he had been drinking." About 6:00 or 6:30, the patrolman drove defendant to Yadkinville, taking him home. The patrolman testified: "I did not notice the smell of alcohol on Grady in the car when we were driving back to Yadkinville. Grady sat on the front seat there and I talked to him all the way back. I noticed the smell of alcohol on him when I first got up with him in the hospital. I sat down right beside him on a bench and was talking to him." Again: "(H)e (defendant) was not drunk when I put him out at his home that morning."

Joe Williams testified: "I did not see any whiskey in the car. I did not see anybody drink any whiskey. I did not see anybody drink any

beer or any form of intoxicating beverage." Again: "I could smell the odor of liquor on Grady that night, after we got into his car, and before we got to the church. Although I was sitting on the back seat of the car and Grady was sitting on the front seat, I could smell liquor on him when he turned around." Joe Williams testified that Cranfill, "on the way to Jonesville," told him "he saw Grady drinking whiskey while he was at the service station."

Neither Williams nor Joe Williams nor Cranfill "had had anything to drink that night."

There was no evidence as to prior relationships between defendant and the Williams boys or Cranfill except the simple statement that they were friends. There was no evidence that either of the Williams boys or Cranfill, on any prior occasion, had been a passenger in a car operated by defendant. There was no evidence that defendant had any prior reputation or record as a reckless driver.

In Yadkinville, defendant gave Williams permission to drive his car to Jonesville. Certainly, under these circumstances, it was not contributorily negligent as a matter of law for the Williams boys and Cranfill to get into defendant's car in Yadkinville for the trip to Jonesville. The more serious question is whether, after defendant had made Williams stop at Mitchell Chapel Church, Williams and Cranfill were guilty of contributory negligence in continuing the trip with the knowledge that defendant insisted on driving from there to Jonesville. The Williams boys and Cranfill were in high school or had just graduated. It was defendant's car. Defendant was 29. It may be inferred that the three boys deemed it both unwise and futile to object or interfere.

True, the Williams boys and Cranfill could have refused to accompany defendant from Mitchell Chapel Church to Jonesville. In such case, they would have been stranded in the churchyard about 4:00 a.m. All circumstances considered, we cannot say they were contributorily negligent as a matter of law in remaining in the car after defendant stated he was going to take over the driving. Nor do we think their failure to call upon him to slow down or otherwise object to the way he drove, over a comparatively short distance, may be considered contributory negligence as a matter of law. If and when it became evident that defendant was driving too fast on a narrow and crooked tar and gravel road, whether, under the circumstances, remonstrance and protest by the passengers would likely restrain defendant or would merely divert him and render their predicament more hazardous, was for jury determination. As stated by *Connor, J.,* in *Smith v. R. R.,* 200 N.C. 177, 182, 156 S.E. 508: "It is a matter of common knowledge to those who ride in automobiles—certainly to those who

drive them—that 'back seat' driving often confuses a driver, and more often than otherwise, prevents him from avoiding dangers encountered on the road." Certainly, actual physical interference with the manner in which defendant was operating the car would have increased the hazard.

Williams testified he *guessed* he made this statement to an investigator: "I am of the opinion that I should not have got back in the car when we stopped at the Mitchell Chapel Church." Joe Williams testified he made this statement to an investigator: "I am of the opinion I should have got out of the car when we stopped in front of the Mitchell Chapel Church." He added that this was still his opinion. In retrospect, these opinions were certainly justified. However, they shed little, if any, light upon how matters reasonably appeared to Williams and Cranfill when they were in the churchyard. See *Henderson v. Henderson*, 239 N.C. 487, 80 S.E. 2d 383.

Unquestionably, the evidence was sufficient to justify the submission of the contributory negligence issue in each case. This was done. The jury answered the contributory negligence issues in favor of plaintiffs. The charge of the trial court was not included in the record on appeal. Hence, it is presumed that the jury was instructed correctly on every principle of law applicable to the facts. *Hatcher v. Clayton*, 242 N.C. 450, 453, 88 S.E. 2d 104, and cases cited. Although sufficient to support jury findings that Williams and Cranfiill were guilty of contributory negligence, the conclusion reached is that the evidence does not establish contributory negligence as a matter of law. Hence, defendant's motions for judgments of nonsuit were properly overruled.

No error.