RUTH R. GORDON v. EVANS SPROTT, GOLDIE ZARO STARR AND ELIZABETH LYLE STARR, TRADING AS EAGLE THEATRE.

(Filed 1 March, 1950.)

**1. Negligence § 11—**

Plaintiff's negligence need not be the sole proximate cause of her injury in order to bar recovery, but it is sufficient for this purpose if it be one of the proximate causes thereof.

**2. Negligence §§ 4f, 19c—Plaintiff's evidence held to show contributory negligence as matter of law barring recovery for fall in theatre aisle.**

Plaintiff's action was based upon the negligence of defendant theatre in failing to properly light aisles in its balcony. Plaintiff's evidence tended to show that she voluntarily went to the balcony of the theatre, which she had visited before, and in going to her seat on the rear row of seats, stepped up the six inch elevation from the aisle to the floor upon which the seats were fastened, but that in leaving the theatre after the show, and after passing seats near the aisle which she saw to be vacant, she fell when she attempted to step into the aisle because there was insufficient light for her to see the difference in the floor levels. *Held:* Plaintiff's own evidence discloses contributory negligence constituting a proximate cause of her injury, and defendants' motion to nonsuit should have been allowed.

APPEAL by defendants from *Nettles, J.,* at Regular November Term, 1949, of BUNCOMBE.

Civil action to recover for alleged personal injury allegedly resulting from actionable negligence of defendants.

Plaintiff alleges in her complaint substantially these facts: That about 4 o'clock on afternoon of 5 February, 1949, she with her husband and their daughter, entered the Eagle Theatre, located on Eagle Street in the city of Asheville, as a paying guest and invitee of defendants; that observing that there were no seats available on the first floor of the theatre, she, and they, went to the balcony for seats; that when they reached the balcony they took seats on the first row of seats from the rear; that about two hours later after having seen the picture being featured at the time, and as defendants were showing dark scenes in their previews of coming attractions, she and her companions attempted to leave the theatre and as she attempted to step into the aisle from the row of seats on which she had been sitting, which was approximately seven inches higher than any other seats in the balcony, she was caused to fall and injure herself; that the rear row of seats, mentioned above, was elevated approximately seven inches higher than the aisle into which plaintiff was attempting to walk; that she had attended said theatre on other occasions prior to this but that she had always sat on seats other than said rear elevated seats, and, as she attempted to walk into the aisle on this occasion, she was taken by surprise when she found the aisle was not level with the

floor of the row of seats from which she was stepping, and was caused to
fall violently to the floor inflicting serious and permanent injury to her
great damage, etc., and that her fall was caused "by reason of the defend-
ants negligently causing the theatre to be extremely dark in the position
where plaintiff was attempting to walk, and by reason of the defendants'
negligent failure to provide step lights, wall lights, or aisle lights project-
ing from the seats immediately adjacent to the aisle."

Defendants, answering, denied the allegations of the complaint in
material aspect, and for further answer and defense pleaded: (1) That
any injury plaintiff may have sustained resulted and arose solely from,
and was proximately caused by her own careless, wrongful and heedless
conduct in that (a) she voluntarily selected the seat in the last row in
the balcony, whereas there were a large number of seats in other rows
and other sections of the theatre available to her; and (b) she failed to
keep a reasonable lookout upon leaving her seat in the row and stepping
into the aisle, or failed to see the step of which she complains and which
she could have seen in the exercise of reasonable care; and (2) that if
defendants were negligent, the negligence of the plaintiff as above set
forth was at least a concurring and contributing proximate cause, and is
pleaded in bar of her right to recover in this action.

Upon the trial in Superior Court the evidence offered by plaintiff
tended to show these facts: That "there are two aisles that go down the
length of the theatre, on the ground floor, one on the right and one on the
left, with seats on the . . . right of the right aisle, in the middle between
the two aisles, and on the left of the left aisle." The balcony is reached
from the lobby by stair steps. In the balcony there is an aisle on the left
side between the ends of the rows of seats and the building wall. And
there is an aisle back of the rear row of seats. The floor of the balcony
is on level with the rows of seats, except the rear row of seats is on an
elevation of six or seven inches above the level of the adjacent aisle.

And plaintiff and her daughter, 15 years of age, both testified in behalf
of the plaintiff. Their testimony may be narrated in pertinent part as
follows: The picture shows at the Eagle Theatre in the city of Asheville
begin about three o'clock p.m. and run continuously until about eleven
o'clock p.m. People come and go all the time, and were doing so on the
afternoon of 5 February, 1949. On that afternoon plaintiff, accompanied
by her husband and her said daughter, went to the theatre about four
o'clock. They bought three tickets and entered. There were no seats
available, none could be found, on the ground floor, and they went to the
second floor, as plaintiff testified, and none were seen by the daughter
when she looked from the right aisle,—she just took a glance, and did
not see any close, and then they went to the balcony without doing any-
thing more about seats downstairs because, using her language, "We

didn't want to sit down there so close to the picture. If there were vacant seats down on the first floor, they were too close to suit us."

Arriving at the balcony, it was dark. Plaintiff and her husband entered the last row of the balcony seats. The entrance to this row of seats is on the aisle between the end of the rows and the wall on the left-hand side. Plaintiff's husband found two seats, not together, on this row. Plaintiff testified that "As we went in my husband had me by the arm and he led me practically. It was so dark we couldn't see."

And, again, plaintiff testified, "When I got upstairs to the balcony, I knew how to go because I had been there before . . . It was dark, not pitch dark, but too dark to walk . . . My husband got me to the seat. I got up that little elevation all right with his help." Her seat was about middleways the rear row. Her husband pointed it out, and she got in it. There were more than four persons sitting on the same row to her left. The daughter says she sat in front of her father and mother. They, all, stayed there until 6:30 o'clock, when the picture they had come to see was finished. Plaintiff then got up to leave. As she was leaving, a colored cast was being shown on the screen. And she says "When I went to step out, come out, I just stepped right down in a hole . . . and fell . . ." She further says, "When I went into the place it was dark . . . It was darker coming out than it was going in . . . Some one was going out of the same row ahead of me . . . I didn't think, I was thinking too, but I knew there was a place there because I stepped up, but . . . I didn't see it and it was so dark. There was not any light and if there had been a light I could have seen it." The four people sitting to plaintiff's left did not get up to leave when she did, but those at the end of the row had done so. And plaintiff testified, "The condition of the balcony upstairs was known to me, but I had never sat in that seat before. I never had to sit in that seat before. I never had been no more than the third seat. I had been there it was two times and this was the third time . . . I noticed there was no light before I fell. I noticed before I went in that there was no light."

Plaintiff's daughter further testified: "After we had seen the picture, I got out first and Mother and Father followed in the back row. As we were coming out . . . this little step part was close to the first seat in the back row and when she stepped down she fell . . . There were no aisle lights there and there were no step lights. It was not very light in the balcony. As the picture was going off it was rather dark. It was not light. Before then it was light. You could see a little bit but when the picture was going off that throwed it to be rather dark up there in the balcony."

Then on cross-examination, plaintiff's daughter continued in pertinent part: "I know that there would be more than four seats between the

place where my mother was sitting and the aisle, on her left . . . My mother went out ahead of my father, coming out of the row of seats. To get out she had to slip between the knees of people sitting to her left, and the back of the row just ahead of her. She had to squeeze between those people . . . Sometimes when you have been in a picture show and sat there for two hours, your eyes become accustomed to the darkness and you can see better after you have been in there two hours than when you just got in. To my eyes, it was so that day . . . My mother has had trouble with her eyes before this happened. She used to wear glasses until she lost them."

When plaintiff first rested her case, defendants reserving exception to the denial of their motion for judgment as of nonsuit, offered evidence tending to contradict testimony of plaintiff as to visibility in the balcony, and other tending in part to elucidate that offered by plaintiff. Their evidence tended to show that there are five rows of seats in the balcony; that at the time there were 14 seats across in the back row in the balcony; and that the very back row in the balcony is elevated six inches so that the back row would not be on the same level with the row in front of it. And the manager of the defendants testified: "I have read advertisements of the modern and most approved lighting devices for theatres. I have been to a number of theatres. The modern and most approved devices for theatres is to have aisle lights at the end of each row of seats at the aisle. On February 5th, 1949, there in the afternoon I did not have aisle lights at the end of each row of seats there in that balcony."

Defendants' motions for judgment as of nonsuit entered at the close of all the evidence were denied, and they excepted.

The case was submitted to the jury upon three issues, relating first to negligence of defendants, second to the contributory negligence of plaintiff, and third, to damages. The jury answered the first "Yes," the second "No," and the third in specific amount. And from judgment on the verdict, defendants appeal to Supreme Court and assign error.

*Sanford W. Brown and James W. Regan for plaintiff, appellee.*
*Smathers & Meekins for defendants, appellants.*

WINBORNE, J. The assignments of error presented on this appeal pivot on the exceptions to the rulings of the trial court in denying defendants' motions, aptly made, for judgment as of nonsuit. If it be conceded that there is sufficient evidence to support a finding by the jury that defendants were negligent in the respects alleged, it is clear that, as a matter of law, upon plaintiff's own testimony, she was guilty of negligence which was at least a proximate cause of the injury of which she complains. If a plaintiff's negligence is one of the proximate causes of the injury, it is

sufficient to defeat recovery. It need not be the sole proximate cause. *Moore v. Boone, post,* 494; *Fawley v. Bobo, ante,* 203, 56 S.E. 2d 419; *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251; *Bus Co. v. Products Co.,* 229 N.C. 352, 49 S.E. 2d 623, and numerous other cases.

Moreover, "In general a theater patron who was injured in a darkened theater must have exercised ordinary care for his own safety, and if he failed to do so he cannot recover notwithstanding the negligence of the theater operator." 143 A.L.R. 61, Annotation III (a).

And "Where a person *sui juris* knows of a dangerous condition and voluntarily goes into the place of danger, he is guilty of contributory negligence, which will bar his recovery." *Dunnevant v. R. R.,* 167 N.C. 232, 83 S.E. 347; *Groome v. Statesville,* 207 N.C. 538, 177 S.E. 638.

Applying these principles to the case in hand, and bearing in mind the allegations of negligence, limited to lack of light and lighing facilities, upon which she bases her cause, it is seen: Plaintiff voluntarily went to the balcony of the theatre. When she reached there, she "knew how to go" because she "had been there before,"—twice, she says. The condition of the balcony was known to her, though she had not "sat in that seat before." She knew that the rear row of seats was on an elevated plane, for, in entering, she says "I got up that little elevation all right." Again, she says, "I knew there was a place there because I stepped up." And when she entered the balcony she noticed "there was no light," and before she fell she noticed "there was no light." But in coming out it was light enough for her to see that those persons on the end seats of the rear row, that is, those next to the aisle, had gone out. Thus she knew or by the exercise of ordinary care she should have known that as she approached the end of the row, she was approaching the place of the elevation of which she knew.

And it may be noted that while plaintiff speaks of stepping into a hole, the allegations of her complaint, and her own testimony show clearly that it was no more than the space below the plane of the rear row of seats, where she sat, and the level of the aisle floor. And such is not alleged as negligence.

This case is distinguishable in factual situation from the cases of *Drumwright v. Theatres, Inc.,* 228 N.C. 325, 45 S.E. 2d 379, and *Mulford v. Hotel Co.,* 213 N.C. 603, 197 S.E. 169, on which plaintiff, as appellee, relies, and is not controlled by the decisions there.

For reasons here stated, defendants' motions for judgment as of nonsuit should have been allowed. Hence, the judgment below is

Reversed.