MRS. LOREN M. TEW, Administratrix of the Estate of LOREN M. TEW, Deceased v. LOUIS CLAYTON RUNNELS.

(Filed 8 October, 1958.)

**1. Appeal and Error § 51—**

Where defendant introduces evidence, only the motion for judgment as of nonsuit made at the close of all of the evidence is presented for review.

**2. Trial § 22b—**

On motion to nonsuit, evidence offered by defendant which is favorable to plaintiff or not in conflict therewith, or which clarifies or explains plaintiff's evidence, will be considered.

**3. Negligence § 19c—**

Nonsuit on the ground of contributory negligence should not be granted unless the evidence, taken in the light most favorable to plaintiff, establishes contributory negligence so clearly that no other reasonable inference can be drawn therefrom.

**4. Negligence § 11—**

Contributory negligence need not be the sole proximate cause of the injury in order to bar recovery, but it is sufficient if it contributes thereto as a proximate cause or one of them.

**5. Automobiles § 50—**

If the owner of an automobile is riding therein as a passenger and has the legal right to control the operation of the vehicle by the driver, the negligence of the driver will be imputed to the owner-passenger, and it is immaterial whether the right to control is exercised or not. Further,

the right to exercise such control may be inferred from the fact of the owner's presence in the car.

**6. Same— Evidence held to show contributory negligence as a matter of law on part of owner-passenger under the doctrine of imputed negligence.**

Evidence tending to show that the owner of an automobile instigated a trip and sat at all times next to the driver of the car, that both the owner and the driver were intoxicated to such an extent that neither was competent to operate the automobile on a public highway. but no evidence that the owner was too drunk to know what was going on, that the owner repeatedly insisted that the driver go faster and repeatedly "stomped" his foot on the driver's foot, pushing the accelerator down, and that the accident in suit resulted from the negligent operation of the car at an excessive speed by the driver, *is held* to show contributory negligence on the part of the owner as a matter of law under the doctrine of imputed negligence, and nonsuit in an action by the administratrix of the owner against the driver should have been entered.

**7. Negligence § 19c—**

Whether nonsuit should be granted on the ground of contributory negligence must be determined in the light of the facts in each particular case.

PARKER, J., not sitting.

APPEAL by defendant from *Moore (Dan K.), J.,* March Civil Term 1958 of GASTON.

This is a civil action brought by Mrs. Loren M. Tew, the duly appointed administratrix of the estate of Loren M. Tew, deceased, to recover for the alleged wrongful death of the plaintiff's intestate, growing out of a head-on collision between the car owned by plaintiff's intestate, allegedly driven by the defendant Louis Clayton Runnels, and a 1956 Ford convertible being driven by Jackie Ray Jones, on Highway No. 150 in Crouse, North Carolina, about 9:30 a.m., 15 November 1956.

The evidence offered in behalf of the plaintiff is sufficient to establish the fact that the manner in which the plaintiff's intestate's car was being driven at the time of the head-on collision was the sole proximate cause of the collision.

The plaintiff's evidence tends to show that Loren M. Tew arrived at his home about 11:00 p.m. on Wednesday, 14 November 1956; he had been drinking but was not drunk. He stayed at home until about twelve o'clock that night when he left in his 1957 Ford automobile, for which he had traded about three weeks earlier. When he left he said he was going to a store. Mrs. Tew testified, "I do know of my own knowledge that he would drive his car very fast at times and in

violation of the law. * * * When my husband would indulge in alco-
holic beverages, he would also frequently drive his own car from the
house. * * * Sometimes, he would stay gone all night and maybe all
night and the following day. During those times, I wouldn't have any
idea where he was, except that I knew he left the house drinking
and driving."

Robert Smart, a Highway patrolman, testified that the collision
took place in the Town of Crouse and that the speed limit was 35 miles
per hour in the area where the collision occurred. That he arrived at
the scene of the accident approximately 15 or 20 minutes after the
collision. This witness testified that when he arrived at the scene of
the collision, "I observed a 1957 Ford, Tudor Victoria, on the left
side of the road, off the road down a slight embankment, and further
up the road on the opposite side of the highway, I found a 1956 Ford,
Tudor Convertible. Prior to the collision, the 1957 Ford automobile
was traveling towards Crouse, this is west, and the Ford convertible
was traveling east. After the collision, the 1957 Ford automobile was
sitting about eight or ten feet off the pavement. There was glass and
dirt and oil, an oily substance, looked to be like motor oil and water
or something mixed, in the highway at that location. There were
black marks leading from this location where the oil and water was
on the highway back at an angle across the center line back to —
for 78 feet, back to the center line."

This witness further testified that he visited the defendant Run-
nels at the hospital on the morning following the accident, around
7:00 a.m.; that Mr. Runnels told him he was driving the car; that
he had driven it off and on all night. "He told me where all they had
been and what they did. He said that they had been in Gastonia and
south of Gastonia into the edge of South Carolina; that they had
drunk beer in South Carolina, around — I don't recall the name of
the town; that he and Jack Cantrell and Mr. Tew had been out to-
gether all night on a party; that he had driven it several times during
the night, that they had taken time about driving; that Mr. Cantrell
had driven the car a lot that night. He stated that they had let Jack
Cantrell out of the 1957 Ford at the Bypass Grill before the accident.
He also stated that they went to Riverside near Lincolnton and
turned around after they had discharged Cantrell, and that they
were going to Cherryville. He said that Tew had stomped his foot
at many times during the night. * * * The other things he told me
in the hospital, he said he had had a few drinks of beer that morning
but said he was not drunk. He said that Tew was drinking heavy."

The Reverend Jack Cooke, a Methodist minister, arrived at the
scene of the accident almost immediately after it occurred. His evi-

dence is to the effect that the Tew car was resting on the embankment in such manner that the right rear wheel of the car was off the ground and was still spinning. The left door of the car was open. The defendant Runnels was lying on the hard surface road. Mr. Tew was found with his buttocks and feet against the door opposite the steering wheel. The door was closed and his head was down in his arms toward his knees. The driver of a truck, who appeared at the scene about the same time this witness arrived, helped the Reverend Mr. Cooke remove Mr. Tew from the car. They also removed Mr. Jones from his car; Mr. Runnels was the only one of the three who lapsed into consciousness and unconsciousness and was able to tell this witness his name.

Johnnie Boggs, a driver for Carolina Freight Carriers, which firm also employed Loren M. Tew as a driver, testified, "I knew the late Loren Tew. I saw him on the morning of November 15, 1956. At that time I was going towards Cherryville, right there about — Oh, about a mile below Crouse * * *. I was going up to Carolina (Freight Carriers) in an automobile. I was driving my automobile. I was running around 55 miles per hour. * * * I had seen the 1957 Ford automobile. It passed me. After he passed me, he got on up the road. It was going in the same direction I was. I saw Loren M. Tew in the 1957 automobile that passed me. He was sitting with his back to the right-hand door of the car. It looked to me he had his left leg lying up on the seat towards the driver, and he was looking back at me. I knew Louis Clayton Runnels, but I. didn't recognize him driving the car. The Tew automobile passed me approximately a mile from the scene of the collision. There was a hill or so between us, and I would see him as he would go up and then down a hill. I saw him right up to the collision, except I didn't see the actual collision. I saw the dust and whatnot from the collision. At the time the automobile owned by Tew passed me, I would say that it was going pretty good. I would say maybe eighty miles per hour or more."

On cross-examination, this witness testified that, "Mr. Tew had on a Carolina Freight regular driver's cap * * *. He was just turned around * * * I don't know whether he was looking at me or what he was looking at * * *. He was looking out the rear view window. Not out of the side. * * * I was doing about 50 or 55, and I would say that he was doing at least 80, and probably faster — could have been a little faster, I don't know. The car came by me pretty quick. It didn't get out of sight pretty quick. I watched him all the way down the long hill, and I would see him topping the other hills between me and the wreck. Yes sir, he was doing at least 30 or 35 miles an hour faster than I was going. He was out of my sight when he went off

the dip. When he would top it, I would see him again right up until the collision."

The defendant's evidence tends to show that Loren M. Tew and two other drivers employed by the Carolina Freight Carriers, the defendant Runnels and Jack Cantrell, entered the Tew car shortly after midnight on the morning of 15 November 1956. Tew wanted them to go on a joy ride with him and see how fast his car would run. Jack Cantrell was driving and they went immediately to get a pint of whiskey. Defendant Runnels testified he didn't remember where they went next, but did remember that at one time they were at Bob's Drive-In, which is in or near Maiden; that they were at Bob's around 2:00 a.m. That the next thing he remembered was being in York, South Carolina, at Jay's Truck Stop, at about 3;30 a.m.; that they stopped there a couple of hours; that he drove when they left there. Going back to Gastonia, they stopped once or twice because Tew was sick and vomited; and then he kept moving his foot over and stomping his on the accelerator. He was doing that because he wanted to go faster. He said, "Come on, let's open it up." They returned to Jack Cantrell's home about six or seven o'clock where they had breakfast about 8:30 a.m. In the meantime they had gotten a half pint of whiskey and they took only one drink at Cantrell's house. This witness further testified, "During these periods that I remember during the night, I had been drinking, but I don't believe I was drunk, Loren Tew was definitely drunk. * * * I have not to my knowledge admitted to anyone that I was driving the car. I can't swear that I wasn't driving the Tew car * * *. I don't remember whether I was driving or not."

The defendant's evidence tends to show that Runnels and Cantrell did all the driving during the night and until Tew and Runnels arrived at the Bypass Grill about 9:00 a.m., a few minutes before the collision in which Tew suffered serious injuries and from which he died on 20 November 1956.

Jack Cantrell testified that, while he was driving the Tew car, Tew kept insisting on testing the car to see how fast it would go; that he did drive it at a speed of 127 miles per hour on the road to Gastonia; that during the night they went to Newton, Kings Mountain, and to York, South Carolina. That Runnels drove the car from South Carolina to Dallas, North Carolina; that he drove through Clover, South Carolina at 100 miles per hour; that Tew kept putting his foot on the foot of the driver of the car and pushing down on the accelerator and insisting that they drive faster. This witness further testified that, while Tew was at his house for breakfast he made two telephone calls; that "he wasn't drunk * * * he was, I would say,

drinking a little heavier than we were." That thereafter he drove the car and they returned to the Bypass Grill; that Tew and Runnels wanted him to go with them to Cherryville, but he refused to do so and got in his car and left. But just before he left, Runnels and Tew got in Tew's car and Tew was under the steering wheel; that he stopped at the Hilltop Grill and he later saw the Tew car pass. "I would say Tew was driving." On cross-examination this witness testified, "We drank two and a half pints of whiskey and four or five or six bottles of beer apiece that night in question. * * * We were having a good time. I was with my buddies. I was never drunk. * * * Yes, Mr. Tew was in control of himself at the Bypass Grill when I last saw him."

Issues of negligence, contributory negligence, and damages were submitted to the jury. The jury answered the first issue "Yes," the second issue "No," and awarded damages. From the judgment entered the defendant appeals, assigning error.

*William J. Allran, Jr., Hugh W. Johnston, for plaintiff, appellee.*

*Jonas & Jonas, Helms, Mulliss, McMillan & Johnston, Wm. H. Bobbitt, Jr., Mullen, Holland & Cooke, for defendant, appellant.*

DENNY, J. The sole question for determination is whether or not upon the evidence adduced in the trial below the defendant was entitled to have his motion for judgment as of nonsuit sustained on the ground that the plaintiff's intestate was guilty of contributory negligence as a matter of law.

The defendant offered evidence; therefore, the only motion for judgment as of nonsuit to be considered is that made at the close of all the evidence. *Atkins v. Transportation Co.*, 224 N.C. 688, 32 S.E. 2d 209; *Harrison v. R.R.*, 194 N.C. 656, 140 S.E. 598.

In considering such motion, we will not only consider evidence offered by the plaintiff but that offered by the defendant which is favorable to the plaintiff or not in conflict therewith, or when it may be used to clarify or explain the plaintiff's evidence. *Simmons v. Rogers*, 247 N.C. 340, 100 S.E. 2d 849; *Keener v. Beal*, 246 N.C. 247, 98 S.E. 2d 19; *Godwin v. Cotton Co.*, 238 N.C. 627, 78 S.E. 2d 772; *Rice v. Lumberton*, 235 N.C. 227, 69 S.E. 2d 543; *Ervin v. Cannon Mills Co.*, 233 N.C. 415, 64 S.E. 2d 431; *Bundy v. Powell*, 229 N.C. 707, 51 S.E. 2d 307.

A nonsuit on the ground of contributory negligence should not be granted unless the plaintiff's evidence, taken in the light most favorable to him, so clearly establishes such negligence that no other reasonable inference or conclusion can be drawn therefrom. *Simmons v. Rogers, supra; Keener v. Beal, supra; Blevins v. France*, 244 N.C. 334, 93 S.E. 2d 549; *Bradham v. Trucking Co.*, 243 N.C. 708, 91 S.E.

2d 891; *Singletary v. Nixon,* 239 N.C. 634, 80 S.E. 2d 676.

Even so, the negligence, if any, of the plaintiff's intestate to bar recovery need not be the sole proximate cause of his injury or death. It is sufficient if it contributed to his injury or death as a proximate cause, or one of them. *Blevins v. France, supra; Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396; *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251; *Bus Co. v. Products Co.,* 229 N.C. 352, 49 S.E. 2d 623.

In *Harper v. Harper,* 225 N.C. 260, 34 S.E. 2d 185, *Barnhill J.,* later C.J., in speaking for the Court, said: "The owner of an automobile has the right to control and direct its operation. So then when the owner is an occupant of an automobile being operated by another with his permission or at his request, nothing else appearing, the negligence of the driver is imputable to the owner. (Citations omitted.) * * *

"Strictly speaking, the person operating with the permission or at the request of the owner-occupant is not an agent or employee of the owner, but the relationship is such that the law of agency is applied. * * *" See Anno: Automobile Accident—Owner's Presence, 50 A.L.R. 2d 1281, et seq.

In considering whether or not the negligence of the driver is imputable to the owner, the Court, in the above case, further said: "The test is this: Did the owner, under the circumstances disclosed, have the legal right to control the manner in which the automobile was being operated — was his relation to its operation such that he would have been responsible to a third party for the negligence of the driver? 38 Am. Jur., 931. If the owner possessed the right to control, that he did not exercise it is immaterial." *Dillon v. Winston-Salem,* 221 N.C. 512, 20 S.E. 2d 845.

The plaintiff's intestate, being the owner of the car, did not occupy the ordinarily favored position of a guest passenger. In 5A Am. Jur., Automobiles and Highway Traffic, section 578, page 587, et seq., it is said: "An inference may readily be drawn, from the fact of the owner's presence, that the automobile was being driven by his agent or that he had some control over it, so as to render the owner liable for the driver's negligence."

The evidence of the plaintiff and the defendant clearly points out that the plaintiff's intestate was the instigator and planner of the trip; that he sat at all times next to the driver of the car and repeatedly "stomped" his foot on the driver's foot and pushed down the accelerator; that he insisted over and over again through the night that the driver go faster and faster. This evidence by the defendant's witnesses is not in conflict with the testimony of the plaintiff's witnesses, but is in accord with it. There is a conflict in the evi-

dence as to whether or not the plaintiff's intestate or the defendant Runnels was driving the car at the time of the collision. This is not material on the present question. Plaintiff would not. be entitled to recover against the defendant on any aspect of the present case if at the time of the accident her intestate was driving the car. Therefore, the question posed is bottomed on whether or not the plaintiff is entitled to recover on the facts revealed on the record, conceding that the defendant was driving the car at the time of the accident.

The plaintiff is relying upon the case of *Litaker v. Bost,* 247 N.C. 298, 101 S.E 2d 31. In that case no one contended that Litaker owned the car in which they were riding, or had any control over it. Moreover, there was evidence that Litaker was drunk at the time when the race was planned (just prior to the accident). This Court said: "Whether Litaker was contributorily negligent in riding in the Chrysler when driven by either Stewart or Watson Bost would depend in last analysis on whether he knew what was going on and had consciously committed himself to the assumption of the risk." We concluded that the issue with respect to contributory negligence was properly submitted to the jury. See *Bell v. Maxwell,* 246 N.C. 257, 98 S.E. 2d 33.

We think that plaintiff's evidence and the defendant's evidence, not in conflict therewith, supports the inference that both the defendant Runnels and the plaintiff's intestate at the time of the collision were under the influence of an intoxicating beverage to such an extent that neither one was competent to operate an automobile on a public highway. However, there is no evidence to the effect that plaintiff's intestate was too drunk to know what was going on. *S. v. Gibbs,* 227 N.C. 677, 44 S.E. 2d 201.

While the last cited case involved a criminal prosecution, it lays down a principle with respect to intoxication that is applicable in the present case. In the *Gibbs* case, one Blake Styles was apprehended by patrolmen while operating a truck on a public highway. He was at the time "highly intoxicated." The owner of the truck was present, riding with Styles at the time. He was also "in a drunken condition." The Court said: "Defendant owned the truck and was present, riding thereon as a passenger, while it was being operated by Styles, who was then in an intoxicated condition. He, as owner, nothing else appearing, had the right of control and could, at will, permit or forbid the use of the truck by another. He and his companion had traveled more than 30 or 40 miles and at the time had liquor on the truck. Sufficient time had elapsed for him to discover Styles' condition and forbid his operation of the vehicle.

"While there is testimony tending to show the defendant was in-

toxicated there is no evidence to the effect he was too drunk to be conscious of what was going on * * *; or that defendant had surrendered or relinquished his right of control. * * *

"When an owner places his motor vehicle in the hands of an intoxicated driver, sits by his side, and permits him, without protest, to operate the vehicle on a public highway, while in a state of intoxication, he is as guilty as the man at the wheel. *Story v. U. S.*, 16 F 2d 342, cert. denied, 274 U. S., 739, 71 L.Ed. 1318; 5 Blash. Cyc. Auto L.&P., 67; 9-10 Huddy Auto Law, 30, 51; 5 A.J., 912."

*Kavanaugh v. Myers' Administratrix* (Ky. Appeal), 246 S.W. 2d 451, supports the above view. In that case, the plaintiff's intestate was killed in a collision while riding in a car operated by the defendant Michael Kavanaugh, which car belonged to Kavanaugh's father. There was evidence to the effect that plaintiff's intestate, Kenneth Myers, and Kavanaugh, had been driving around and drinking intoxicating beverages for some time before the fatal accident. Plaintiff recovered in the lower court; on appeal, the Kentucky Court of Appeals said: "It is well settled in this jurisdiction that a guest riding in an automobile with knowledge that the driver is so intoxicated as to cause him to be careless or indifferent to his own safety or that of others, or incompetent to operate the car properly, is guilty of contributory negligence as a matter of law and assumes the risk incident to the operation of the car by a driver in that condition. (Citations omitted.) * * * In *W. F. Robinson & Son v. Jones*, 254 Ky. 637, 72 S.W. 2d 16, 19, we made this statement on the subject of drinking: 'It is known of all men that the drinking of intoxicating liquor, though it be not done to the extent of actual intoxication, begets a spirit of recklessness, and is responsible for numerous accidents.' The evidence is overwhelming that decedent was riding in a car knowing full well that the driver was drinking. More than that, Myers drank with young Kavanaugh and both drank to the extent that they could feel the effects of their liquor. * * * Each not only participated in every act performed by the other, but Myers either urged or approved the actions of Michael that brought about the accident. It is obvious that the drinking cannot be separated from the cause of the wreck. Under the circumstances, Myers was guilty of contributory negligence which precludes recovery of damages for his death." See *Schwartz v. Johnson*, 152 Tenn. 586, 280 S.W. 32, 47 A.L.R. 323; 5A Am. Jur., Automobiles and Highway Traffic, section 792, page 739.

Whether a motion for judgment as of nonsuit should be sustained on the ground that the plaintiff is guilty of contributory negligence as a matter of law, presents in many cases a very difficult question. However, the decision on such motion must be made in light of the

facts in each particular case. When the defendant's motion is so considered on the record before us, we hold that the plaintiff's intestate was guilty of contributory negligence which precludes recovery of damages for his death.

Reversed.

Parker, J., not sitting.