CONTINENTAL INSURANCE COMPANY, A CORPORATION; PENN-SYLVANIA LUMBERMEN'S MUTUAL INSURANCE COMPANY, A CORPORATION; AND WILSON LEWITH MACHINERY CORPORA-TION v. EDISON G. FOARD, D/B/A EDISON FOARD, GENERAL CONTRACTOR

No. 7026SC498

(Filed 18 November 1970)

1. Evidence § 48— qualification of expert witness

The fact that the trial judge reversed an earlier ruling and re-fused to allow a witness to testify as an expert during his testimony on the causes of a fire, *held* not prejudicial where (1) the witness himself stated that he did not consider himself an expert and (2) the trial judge again reversed himself and ruled that the witness had qualified as an "expert fireman."

2. Rules of Civil Procedure § 26— harmless error in preventing the read-ing of depositions

Trial court's error in denying plaintiffs' attorney the permission to read to the jury two depositions that were admissible under Rule 26 *held* not prejudicial under the facts of this case. G.S. 1A-1, Rule 26.

3. Fires § 3— negligence in starting fire — damage to machinery by sprinkler system — sufficiency of evidence

The evidence was insufficient to establish that the damage to plaintiffs' machinery by the operation of a water sprinkler system was caused by the negligence of defendant contractor in using an acetylene torch and starting a fire in the building where the machinery was stored.

APPEAL by plaintiffs from *Bryson, Superior Court Judge,* 26 January 1970 Schedule "B" Session of Superior Court held in MECKLENBURG County.

At the conclusion of the plaintiffs' evidence, the defendant made a motion for a directed verdict. From the granting of this motion, the plaintiffs appeal.

*Berry & Bledsoe by Louis A. Bledsoe, Jr., and Charles O. DuBose for plaintiff appellants.*

*Wardlow, Knox, Caudle & Wade by J. J. Wade, Jr., for defendant appellee.*

MALLARD, Chief Judge.

Plaintiff Wilson Lewith Machinery Corporation (Wilson) brought this action seeking recovery for alleged damage to machinery it owned and had stored in the basement of the Old Lance Packing Company Building (Building) located at 1300 South Boulevard in Charlotte. Wilson, joined by the other plaintiffs, alleged that the damages were caused by the actionable negligence of the defendant's agents and employees in the negligent use of an acetylene torch on the main floor of the Building, causing a fire. The fire activated the sprinkler system. Water was pumped into the Building by the fire department in controlling the fire, and this also poured water onto the equipment stored in the basement causing damage to the machinery. Plaintiff Continental Insurance Company (Continental) and plaintiff Lumbermen's Mutual Insurance Company (Lumbermen's Mutual) alleged that they were corporate entities, and as insurers, they had paid some of the damages of plaintiff Wilson caused by the water and were, to that extent, subrogated to the rights and claims of Wilson against the defendant.

Defendant Edison G. Foard, d/b/a Edison Foard, General Contractor (defendant Foard) in his answer denied that he was negligent in any respect; denied that Wilson's property was damaged; denied the corporate entity of Continental and Lumbermen's Mutual; and denied that Continental and Lumbermen's Mutual, as insurers, were subrogated to any rights of Wilson. Defendant Foard, however, admitted that Wilson owned some textile machinery which was stored in the basement of the Building being renovated.

Plaintiffs offered evidence by testimony and deposition which tended to show that the owner employed the defendant

Foard to renovate the main floor of the Building in Charlotte for a new tenant. The "Electrical Contract" for the renovation was not in defendant's contract. During the course of the renovation, it was necessary to remove some of the walls on the main floor, and while removing them, a steel door frame had to be cut and removed from the structure. An acetylene torch was used to cut through the frame, and one of defendant's employees did the cutting. It took ten to fifteen minutes to cut through the metal. This cutting was done on either Monday, 28 February 1966, or Tuesday, 1 March 1966, at about 9:00 a.m. No baffle plate was used to contain the sparks. The fire occurred in the early morning hours (around 4:30 a.m.) of Wednesday, 2 March 1966. Some debris from the destruction of the walls littered the space around the door frame, and although some of it was being carried off throughout the cutting operation, some remained in the vicinity of the cutting. The debris consisted of hollow tile, mortar mix, dust and cellotex, a type of pressed paperboard. After the steel door frame was removed, water was poured from a five-gallon can all around the immediate area as a precautionary measure.

Plaintiffs' witness, Ivan Curtis Sweatt, testified that he was employed by Vinson Realty Company and that "(o)n the day before the fire I remember that an acetylene torch was being used on the ground floor. I do not know whether it was one or two torches because there were electricians and plumbers—several people using them. I do know that an acetylene torch was being used by someone on the ground floor on Tuesday, the day before the fire."

There was also evidence for the plaintiffs which tended to show that the electricity in the walls was turned off. There were several openings to the Building which had been studded up or were locked. Defendant had the responsibility of locking the rear door but not others. Defendant's workmen were allowed to smoke while on the job, and no containers were provided for their cigarette butts. They scuffed them out on the floor. There was evidence that other people had access to the Building and others were working in the Building. At the completion of the day's work, there was no sign of fire or smoke in the area on either Monday or Tuesday. A fire alarm was turned in at 4:31 a.m. on 2 March 1966. The fire department had to knock the lock off the rear door of the Building to get to the fire. The debris around the area where the cutting had been done was smoldering. The overhead sprinkler system in the

Building had been triggered, and the fire department used water on the smoldering debris. There were holes in the floor. An expert witness testified that the cellotex would hold a spark for long periods of time while showing very little smoke.

There was some evidence in Paul Eugene Stuart's deposition, offered by plaintiffs, that some of the machines owned by Wilson were rusty on an occasion when he saw them. What caused the rust does not appear. It is not clear whether this rust was observed before or after 2 March 1966. Plaintiffs' Exhibit 4 is an envelope containing a blue plastic disc, the contents of which are not printed in the record. On the outside of this envelope there is written what is designated thereon as a "Resume of Recording" of an interview of Paul Eugene Stuart by J. E. Jackson. Plaintiffs offered this, without objection "for the purpose of corroborating or contradicting the testimony of the witnesses." On the back of plaintiffs' Exhibit 4, among other things, appears the following written in ink: "Says was no damage to the building due to the fire, since all that was burned was being torn down by them anyhow. Says he was told some textile machinery was damaged by water. He has inspected and saw rust on the machines. Says some machines at front of basement were not damaged. Did not know who owned the machine."

There was no evidence, received or rejected, that any machinery owned by Wilson was damaged by water. There was no evidence, received or rejected, of the value of any machinery owned by Wilson. Neither was there evidence, received or rejected, of any loss that Wilson sustained from fire or water damage to any textile machinery owned by it.

[1] Plaintiffs' first assignment of error is that the court, after finding that James C. Brown (Brown) was an expert fireman and that he was an expert in determining factors involving the cause of fire, then held that he was not an expert after the witness stated he did not consider himself an expert. This witness was examined by plaintiffs in the absence of the jury. The judge later reversed himself again and stated that the witness had qualified as an "expert fireman." Under the circumstances of this case, no prejudicial error is revealed by the failure to permit this witness to testify as an "expert" during the entire time he was testifying.

Plaintiffs' second and third assignments of error relate to the exclusion of certain testimony of the witness Brown. No prejudicial error appears by the exclusion of his testimony.

[2] Plaintiffs' fourth assignment of error is to the refusal of the court to permit the attorney for appellants to read to the jury the depositions of Leonard Stuart and Paul Stuart. These were admitted into evidence without objection. Both of these witnesses had testified for plaintiffs. Since plaintiffs' witnesses Leonard Stuart and Paul Stuart were employees of the defendant, it was competent for the plaintiffs to use these depositions under the provisions of Rule 26(d)(2)b., which reads:

"(d) *Use of depositions.*—Any part or all of a deposition, so far as admissible under the rules of evidence, may be used at the trial or upon the hearing of a motion or an interlocutory proceeding or upon a hearing before a referee, against any party who was present or represented at the taking of the deposition or who had due notice thereof, as follows:

\* \* \*

(2) When the deponent testifies at the trial or hearing, the deposition may be used

\* \* \*

b. By the party calling deponent as a witness, as substantive evidence of such facts stated in the deposition as are in conflict with or inconsistent with the testimony of deponent as a witness."

The record reveals that the deposition of Leonard Stuart was plaintiffs' Exhibit 5, but the instrument filed in this court purporting to be this exhibit does not carry any such identifying mark. The instrument filed here purporting to be the deposition of Paul Eugene Stuart also does not bear any exhibit number. However, someone has placed the number of this case on the front page of each of these instruments and for the purposes of this case, we will assume that the depositions here are correct copies of the ones offered. None of the parties contend otherwise. The trial court refused to permit plaintiffs' attorney to read these depositions to the jury. The two depositions combined contained over 86 typewritten pages. However, the attorney was informed that he could read these depositions to the jury during his argument. Under the provisions of G.S. 84-14, the court can limit the time that an attorney may argue to the jury. We think that it was error for the trial judge to decline

to permit the attorney to read the depositions to the jury prior
to the beginning of his argument. However, due to the result
reached in this case, it was not prejudicial error.

**[3]** At the close of the plaintiffs' evidence (the defendant
offered none), the defendant Foard moved "that the Court direct
a verdict in his favor in that the facts as introduced or the evi-
dence and testimony that has been introduced in the trial of the
case is insufficient for the Jury to find that the fire occurred
and the damage resulted as alleged in the Plaintiff's Com-
plaint."

The motion for a directed verdict was allowed, and this is
plaintiffs' fifth assignment of error. We are of the opinion and
so hold that the evidence in this case does not show that the
property of Wilson was damaged by the actionable negligence
of the defendant. The trial judge, under Rule 50 of the Rules
of Civil Procedure, correctly allowed the defendant's motion for
a directed verdict at the close of the plaintiffs' evidence on the
grounds that the evidence is insufficient for a jury to find "that
the fire occurred and the damage resulted as alleged in the
complaint."

Affirmed.

Judges PARKER and HEDRICK concur.