U.S. INDUSTRIES, INC. v. LOTON E. THARPE, ADMINISTRATOR OF THE ESTATE OF CRYSTAL FAYE THARPE AND ARCHIE DALE BARKER v. KENNETH ROGER PULASKI

No. 8023SC145

(Filed 5 August 1980)

1. **Automobiles § 74– entering highway in front of oncoming truck – contributory negligence as matter of law**

In defendant's third party action to recover against a truck driver for wrongful death, evidence was sufficient to show that defendant's negligence so clearly contributed as at least one of the proximate causes of the collision that she would be barred as a matter of law from any recovery based on the alleged negligence of the third party defendant, where such evidence tended to show that defendant drove an automobile directly into the path of the third party defendant's oncoming tractor-trailer which clearly had the right of way at a time when the truck was only 100 yards away and when the driver of the rig, third party defendant, could not have avoided hitting the car even though he took evasive action.

2. **Automobiles § 109– owner as passenger – negligence of driver imputed to owner**

In defendant car owner's third party action to recover for personal injuries sustained in an automobile accident, negligence of the driver was imputed to defendant owner so as to bar his claim, since defendant's presence in the car, coupled with his command to the driver to stop, demonstrated his attempts to retain and to exercise his right to control the actual operation of the car, and application of the owner-occupant doctrine was therefore proper.

3. **Appeal and Error § 49– evidence excluded – similar evidence previously and subsequently admitted**

Defendant was not prejudiced by the exclusion of evidence on two occasions since similar evidence was admitted both before and after the exclusion in question.

4. **Rules of Civil Procedure § 48; Trial § 42– majority verdict – time for entering agreement**

An agreement made pursuant to G.S. 1A-1, Rule 48, that a verdict of a stated majority of the jurors will be accepted as the verdict need not be made before the jury begins its deliberations but may be made at any time, and defendant who agreed to accept a verdict of less than twelve could not complain when the verdict ultimately rendered was eleven to one, and the court accepted it as the verdict.

APPEAL by defendant Archie Dale Barker from *Burroughs, Judge*. Judgment entered 13 September 1979 in Superior Court, WILKES County. Heard in the Court of Appeals on 10 June 1980.

Industries, Inc. v. Tharpe

Plaintiff U.S. Industries, Inc., instituted this action against the defendants Loton E. Tharpe, Administrator of the estate of Crystal Faye Tharpe, and Fred F. Barker, Guardian of Archie Dale Barker, seeking to recover $28,784.64 for damages which allegedly resulted to its truck when the truck collided with an automobile owned and operated by the defendants on 27 November 1977. The defendants filed answers denying negligence and asserting a counterclaim against the plaintiff and a third-party claim against plaintiff's driver, Kenneth Roger Pulaski, for wrongful death and personal injuries.

At the close of all the evidence the trial judge directed a verdict for the plaintiff and third-party defendant Pulaski as to defendants' claims for wrongful death and personal injuries.

With respect to plaintiff's claim the following issues were submitted to and answered by the jury as indicated:

1. Was the plaintiff, U.S. Industries, Inc., damaged by the negligence of the Defendants, Crystal Faye Tharpe and Archie Dale Barker?

ANSWER: YES.

2. Did the plaintiff, U.S. Industires, Inc., by its own negligence contribute to its damage?

ANSWER: No.

3. What amount, if any, is the Plaintiff U.S. Industries, Inc., entitled to receive for damages to personal property?

ANSWER: $24,401.95.

4. What amount, if any, is the Plaintiff, U.S. Industries, Inc., entitled to recover for loss of use of its International Tractor and Brown trailer?

ANSWER: $3201.00.

From a judgment directing a verdict as to his claim against the plaintiff and third-party defendant, and from the judgment

entered on the verdict as to plaintiff's claim, defendant Fred F. Barker, Guardian of Archie Dale Barker, appealed.

*Tuggle, Duggins, Meschan, Thornton & Elrod, by Joseph E. Elrod, III and Joseph F. Brotherton, for plaintiff appellee and third-party defendant appellee.*

*Finger, Park and Parker, by M. Neil Finger and Raymond A. Parker, II, for defendant appellant Archie Dale Barker.*

HEDRICK, Judge.

Defendant assigns error to the judgment directing a verdict for the plaintiff and the third-party defendant with respect to defendant's counterclaim and cross claim. The evidence offered at trial tends to show the following:

The collision giving rise to this cause occurred about 9:00 p.m. on 27 November 1977 at the intersection of U.S. Highway 21 Bypass and Poplar Springs Road between a tractor-trailer owned by plaintiff and driven by plaintiff's agent, Pulaski, third-party defendant, and a Mustang Cobra automobile owned by the defendant, Barker, and driven by the defendant, Tharpe. U.S. Highway 21 in the vicinity of its intersection with Poplar Springs Road contains four lanes divided by a median 45 feet wide with two lanes for traffic moving south and two lanes for traffic moving north. Poplar Springs Road at that point has two lanes and runs east and west.

Pulaski testified that he was driving plaintiff's rig south over U.S. Highway 21. He was thoroughly familiar with the intersection of Highway 21 and Poplar Springs Road. As he approached the intersection Pulaski saw two cars on Poplar Springs Road approaching Highway 21 from his left and moving in a westerly direction. The first vehicle on Poplar Springs Road passed through the intersection and was not really a concern to Pulaski, although he took his foot off the accelerator and steered slightly left to be sure that the car had plenty of room to get across. He may have placed his foot on the brake pedal, but he did not apply the brakes. Pulaski turned the rig he was driving back to the right as the second car (defendant's auto-

mobile) crossed the median. At that point Pulaski was driving approximately 55 m.p.h. in a 55 m.p.h. zone. Pulaski testified that he did not think the defendant's automobile would attempt to pass in front of him and he therefore did not attempt to reduce his speed. Defendant's vehicle appeared to stop momentarily, and then moved forward directly in front of him. Pulaski testified he steered his truck to the right in an effort to avoid a collision and applied his brakes just before striking the right front of defendant's vehicle with the left front of the truck.

Further evidence showed that earlier that evening, defendant Barker and a friend, Hudspeth, met the defendant Crystal Tharpe in Elkin. Tharpe wanted to drive Barker's new car. Barker allowed her to drive and she, Barker, and Hudspeth went to visit a friend. On the way back the defendant Tharpe was driving the defendant Barker's automobile in a westerly direction along Poplar Springs Road approaching the intersection with U.S. Highway 21. Barker was riding in the right front seat of his automobile with Tharpe driving. Hudspeth was riding in the rear seat. Hudspeth testified as follows:

. . .

She came up to the stop sign. Then I looked. I didn't see anything coming, I looked in both directions. I always do that. From that point that we were sitting there, you could see north to the top of the hill. That would be approximately 350 yards to the top of the hill. Then, Crystal Tharpe decided to cross the northbound lane, went into a median. As — come out of the median, I seen the truck coming under the flashing light. I hollered "Stop."

Q. Who hollered "Stop?"

A. All of us — me and Archie hollered, "Stop."

. . .

A. Okay, I —

Q. Just a minute —

.  .  .

Q. Who hollered, "Stop?"

A. Me and Archie.

.  .  .

A. Okay.

.  .  .

Q. All right, now, upon your and Archie hollering, "Stop," what did Crystal Faye Tharpe do?

A. She stopped, or to the best of my knowledge, she did stop just a second and the truck — the time she stopped — she accelerated again. And she went straight across — truck was coming straight at us — he was turning to right, it looked like to me, to miss us — I don't know. Anyway, he was turning to the right as the truck slammed into us.

Q. All right, sir, how far up the highway was the truck at the time that you first saw the truck?

A. Coming under the flashing lights about 200 yards.

Q. About 200 yards? Where was the truck at the time that Crystal Faye Tharpe stopped her motor vehicle, or the motor vehicle?

A. About a hundred yards.

Q. All right. You may state what you did after Crystal Faye Tharpe stopped the motor vehicle.

A. I turned around and turned my head back.

Q. All right, sir, what did you see?

A. I seen the truck coming straight at us and I looked at the truck 'til it hit us.

Q. All right. Now, do you have an opinion satisfactory to yourself as to the speed that the tractor-trailer was going at the time that you observed it coming along the 100 yards until it collided with the motor vehicle in which you were riding?

. . .

Q. Do you have an opinion?

A. Yeah, I have an opinion, looking at the truck —

. . .

Q. What is that opinion?

A. My opinion, I'd say sixty miles an hour.

. . .

I observed the truck coming into the car in which I was riding. As the truck crashed into the car, the last thing that I remember, I thought I felt glass hit me in the face. After everything come to a stop, I don't know where I was at, but I got up and grabbed hold of something to stand up. The next thing I remember, I was in the hospital. This was the next day.

I think Crystal Faye Tharpe came to a stop — I think the time she stopped, she accelerated just about as fast as she stopped. She came to that stop about halfway out into the right lane of the southbound travel, inside lane. It was the inside lane.

I am familiar with the diagram over there a little bit.

. . .

Q. All right, how about stepping over here and looking at the diagram and see if you can —

A. You want me to point out where we stopped —

. . .

Q.    . . . Can you point out here on this diagram where you stated that Crystal Faye Tharpe stopped her motor vehicle?

[A]. The front of the car was about halfway out into the inside lane. In other words, the car — half of it was in the turn lane and the other half of it was in the inside lane here.

Defendant argues that the court erred in directing a verdict for the plaintiff and the third-party defendant Pulaski on his claims against them because the record contains evidence sufficient to raise an inference that Pulaski was negligent, and that his negligence was a proximate cause of the collision; that the evidence, when considered in the light most favorable to the defendant, does not show contributory negligence as a matter of law on the part of the defendant Tharpe; and that, even if the evidence does not establish contributory negligence as a matter of law as to the defendant Tharpe, such negligence is not imputed as a matter of law to the defendant Barker. Our decision with respect to the last two contentions of the defendant makes it unnecessary for us to discuss the first. However, since contributory negligence presupposes negligence upon the part of the one against whom a claim is asserted, *Dennis v. Voncannon,* 272 N.C. 446, 158 S.E. 2d 489 (1968), we want to point out that our discussion of the defendant Tharpe's "contributory negligence" is not to be understood as a holding upon our part that the evidence in this record raises an inference that the third-party defendant, Pulaski, was negligent in the operation of the plaintiff's truck and that such negligence was a proximate cause of the collision.

We turn then to the issue whether the evidence proves contributory negligence as a matter of law on the part of the defendant Tharpe. The rule is simply stated:

When the evidence establishes contributory negligence "so clearly that no other conclusion may be reasonably drawn therefrom," *Holland v. Malpass,* 255 N.C. 395, 398, 121 S.E. 2d 576, 578 (1961); *see also Ragland v. Moore,* 299 N.C. 360, 261 S.E.

2d 666 (1980), then a directed verdict for the defendant [Pulaski in this case] is not only appropriate, it is mandated. *Rouse v. Snead,* 271 N.C. 565, 157 S.E. 2d 124 (1967). The negligence of the plaintiff [defendant Tharpe in this case] need not be the sole proximate cause of the injury; if such negligence contributes as *one* of the proximate causes of the injury, then it suffices to bar any recovery. *Holland v. Malpass, supra; Cook v. City of Winston-Salem,* 241 N.C. 422, 85 S.E. 2d 696 (1955).

Our Courts have held time and again that "where a person *sui juris* knows of a dangerous condition and voluntarily goes into the place of danger, he is guilty of contributory negligence, which will bar his recovery." *Dunnevant v. Southern Railway Co.,* 167 N.C. 232, 234, 83 S.E. 347, 348 (1914); *see also Cook v. City of Winston-Salem, supra; Gordon v. Sprott,* 231 N.C. 472, 57 S.E. 2d 785 (1950). This principle is plainly applicable to the factual situation presented by the case before us.

It is elementary that one who is entering or seeking to enter or cross a dominant highway from a servient street must yield the right of way to traffic traveling upon the dominant road. G.S. § 20-158. The driver who is required to stop should not proceed, with oncoming vehicles in view, until in the exercise of due care he has determined that he can proceed safely. *Satterwhite v. Bocelato,* 130 F. Supp. 825 (E.D.N.C. 1955); *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357 (1954); *see* G.S. § 20-158. Furthermore, "[n]othing else appearing, the driver of a vehicle having the right of way at an intersection is entitled to assume and to act, until the last moment, on the assumption that the driver of another vehicle, approaching the intersection, will recognize his right of way and will stop or reduce his speed sufficiently to permit him to pass through the intersection in safety." *Dawson v. Jennette,* 278 N.C. 438, 445, 180 S.E. 2d 121, 126 (1971). The motorist who is required to stop and ascertain whether he can proceed safely is deemed to have seen what he would have been able to see had he looked. "[H]is liability to one injured in a collision with his vehicle is determined as it would have been had he looked, observed the prevailing conditions and continued to drive as he did." *Raper v. Byrum,* 265 N.C. 269, 274, 144 S.E. 2d 38, 41 (1965).

[1] When we apply these principles of law to the facts of this case, we find only one conclusion reasonable: Defendant Tharpe's own negligence so clearly contributed as at least one of the proximate causes of the collision that she would be barred as a matter of law from any recovery based on the alleged negligence of the third-party defendant, Pulaski. It follows that any recovery from the plaintiff on the theory of *respondeat superior* would also be barred. While it is undisputed that Tharpe did stop upon first arriving at the intersection of Poplar Springs Road and Highway 21 in obedience to the stop sign there erected, G.S. § 20-158, it is also undisputed that she thereafter failed to stop sufficiently and to yield the right of way at the intersection of the median strip and the southbound lanes of Highway 21 as required by G.S. § 20-155(a). The evidence of record in this case establishes beyond question that the defendant Tharpe drove the automobile directly into the path of the oncoming tractor-trailer which clearly had the right of way at a time when the truck was only 100 yards away and when the driver of the rig, Pulaski, could not have avoided hitting the car even though he took evasive action.

We find the case of *Raper v. Byrum, supra,* factually indistinguishable from the one we decide today. In *Raper* the evidence established that plaintiff's intestate, even though he came to a stop in obedience to the stop sign, thereafter drove at a slow rate of speed into the intersection "when the automobile of the defendants was so near to it that a collision was a virtual certainty." 265 N.C. at 275, 144 S.E. 2d at 42. *See also Snider v. Dickens,* 293 N.C. 356, 237 S.E. 2d 832 (1977). We agree with the *Raper* Court that, in *Raper* as in the case at hand, "[i]t might well be concluded that this was the sole proximate cause of the collision." *Id.* In any event, even if the negligence of Tharpe in driving into the intersection under the circumstances established by all the evidence was not the sole proximate cause of the collision, it was one of the proximate causes and therefore would be sufficient to bar any recovery by Tharpe.

[2] The issue thus becomes whether the defendant Barker's claim is also barred by the doctrine of imputed negligence. That is, must the negligence of the defendant-driver Tharpe be im-

puted to the owner-occupant Barker so as to bar his right to recover as a matter of law? We answer this issue in the affirmative.

The owner-occupant doctrine, so-called, holds that when the owner of the automobile is also an occupant while the car is being operated by another with the owner's permission or at his request, negligence on the part of the driver is imputable to the owner. *Harper v. Harper*, 225 N.C. 260, 34 S.E. 2d 185 (1945). Such is the case because the owner maintains the legal right to control the operation of the vehicle. *Randall v. Rogers*, 262 N.C. 544, 138 S.E. 2d 248 (1964); *Siders v. Gibbs*, 39 N.C. App. 183, 249 S.E. 2d 858 (1978). That the owner does not exercise control or is physically incapable of exercising control is of no consequence. *See, e.g., Tew v. Runnels*, 249 N.C. 1, 105 S.E. 2d 108 (1958); *Baird v. Baird*, 223 N.C. 730, 28 S.E. 2d 225 (1943); *Etheridge v. Norfolk Southern Railway Co.*, 7 N.C. App. 140, 171 S.E. 2d 459, *cert. denied*, 276 N.C. 327 (1970). Indeed, the right of the owner to control the operation of the car can be inferred from the presence of the owner in the car. *Tew v. Runnels, supra.* To avoid the operation of the doctrine, the owner of the vehicle must prove that he relinquished, "for the time being, the incidents of ownership and the right to control the manner and methods of its use." *Shoe v. Hood*, 251 N.C. 719, 724, 112 S.E. 2d 543, 548 (1960).

In the instant case the undisputed and unchallenged facts illustrate a classic case of the owner-occupant doctrine. Furthermore, even if we assume that Barker, as defendant insists, yelled for Tharpe to stop, such action is not sufficient to avoid the operation of the doctrine. There is no evidence that the defendant Barker by any conduct released the *right* to control his car. Manifestly, his presence, coupled with his command to the driver to stop, demonstrates his attempts to retain and to exercise his right to control the actual operation of the car. We hold the negligence of the driver Tharpe under the circumstances of this case is imputed to the owner Barker as a matter of law. Thus, the trial judge correctly directed a verdict for the plaintiff and the third-party defendant as to defendant Barker's claims.

[3] We consider now the defendant's assignments of error with respect to the trial of the plaintiff's claim. Defendant first assigns as error and argues the court erred in not allowing the witness Hudspeth to testify that he [defendant Barker] yelled, "Stop," when it became obvious that Tharpe was not going to stop for the truck. While the court sustained objections on two occasions to questions inquiring of Hudspeth what the defendant Barker said to Tharpe as she proceeded across the median, it appears from the record that Hudspeth testified numerous times on both direct and cross-examination before and after the challenged rulings that Barker yelled "Stop" to Tharpe. Clearly, any "[e]rror in excluding evidence will almost always be cured by allowing its admission later in the trial, . . . " 1 Stansbury's N.C. Evidence, *Witnesses* § 28 at 74 (Brandis rev. 1973). *See, e.g., Continental Insurance Co. v. Foard,* 9 N.C. App. 630, 177 S.E. 2d 431 (1970). With respect to this assignment of error, the defendant's position is untenable. If the judge erred in twice excluding the evidence, the error obviously was not prejudicial error entitling defendant to a new trial.

Defendant next argues the court erred in its instructions to the jury on the doctrine of imputed negligence by instructing the jury "that the negligence of Crystal Faye Tharpe would be imputed to the defendant Archie Dale Barker." Our disposition above of the issue regarding imputed negligence obviously resolves the question raised by this assignment of error. We find no error in the charge.

[4] Finally, the defendant contends the court erred in accepting "less than a majority verdict," even though the record proves that he agreed during the time the jury was deliberating to "take a verdict of nine or more." The verdict ultimately rendered was eleven to one, and based on the prior agreement of all counsel, the court accepted it as the verdict, pursuant to G.S. § 1A-1, Rule 48, which provides:

> Except in actions in which a jury is required by statute, the parties may stipulate that the jury shall consist of any number less than 12 *or that a verdict* or a finding *of a stated majority of the jurors shall be taken as the verdict* or finding of the jury. [Emphasis added.]

Industries, Inc. v. Tharpe

Defendant argues that the agreement must be made before the jury begins its deliberations, although he admits he has no authority to support his interpretation of the statutory language. We cannot agree. The statute does not by its terms restrict the time at which the parties may stipulate to accept a stated majority verdict. In our opinion a fair interpretation of the language allows such an agreement to be made at any time. Defendant voluntarily agreed to accept a verdict of less than twelve, although he certainly could have held out for nothing less than a verdict of the twelve. He will not now be heard to complain.

The result is: The Judgment directing a verdict for the plaintiff and the third-party defendant Pulaski on the defendant appellant's claims is affirmed. With respect to the judgment for the plaintiff entered on the jury verdict, we find in the trial thereof no error.

Affirmed in part; no error in part.

Judges MARTIN (Robert M.), and MARTIN (Harry C.) concur.