BOBBY JACK ALLEN v. JOE LYNN METCALF, EMILY ANN METCALF, AND SAMUEL JOSEPH BROWN.

(Filed 8 April, 1964.)

**1. Automobiles § 49—**

Ordinarily, the question of contributory negligence of a guest in an automobile involved in a collision is for the jury to determine in the light of the facts and circumstances of the particular case, but when contributory negligence is the sole reasonable conclusion that can be drawn from the evidence, nonsuit in the guest's action against the driver is proper.

**2. Negligence § 26—**

Nonsuit on the ground of contributory negligence is proper only when the evidence is so clear on that issue that no other conclusion is reasonably permissible.

**3. Automobiles § 49— Evidence held to show contributory negligence as a matter of law on part of plaintiff passenger.**

Evidence tending to show that from the inception of the trip the driver showed a propensity for speeding and recklessness, that each time he was urged to reduce speed he complied only to resume dangerous speed immediately thereafter, that the driver drank at least one can of beer to the knowledge of plaintiff passenger, that plaintiff, the only adult in the vehicle, had at least three opportunities to quit the trip, and that thereafter, while plaintiff was asleep, the driver lost control and wrecked the vehicle as the result of speed and recklessness, *is held* to disclose contributory negligence as a matter of law on the part of plaintiff. The fact that plaintiff was asleep at the time does not improve his position, since the ap-

proach of sleep is usually indicated by premonitory symptoms, and plaintiff went to sleep knowing of the impending danger, and the onset of drowsiness was a further compelling reason why he should have abandoned the trip.

APPEAL by plaintiff from *Huskins, J.,* October 1963 Session of MADISON.

*A. E. Leake for plaintiff.*
*Horner and Gilbert for defendants.*

MOORE, J.  This is an action to recover damages for personal injuries sustained by plaintiff in a collision of automobiles. Plaintiff appeals from a judgment of involuntary nonsuit.

The collision occurred about 7:45 P.M., 14 December 1962, on U. S. Highway 64, about 2.2 miles west of Brevard. A Chevrolet Corvair, owned by Emily Ann Metcalf and operated by Joe Lynn Metcalf, collided head on with a car driven by defendant Brown. Plaintiff was a passenger in the Metcalf car. Plaintiff alleges that the collision was caused by the negligence of Joe Lynn Metcalf (hereinafter Metcalf) in that, at the time of the collision, he was under the influence of intoxicating liquor, driving recklessly, violating the speed statutes, not maintaining a proper lookout, not exercising reasonable control, and driving on his left-hand side of the highway. Defendants Metcalf, answering, allege that plaintiff was contributorily negligent in failing to keep a proper lookout, failing to warn Metcalf of traffic hazards, failing to remonstrate with Metcalf for driving negligently, and joining and continuing with the driver and other passengers in an extended trip while all were in varying degrees under the influence of intoxicating liquor.

Defendant Brown is not involved on this appeal. Plaintiff admits that the evidence is insufficient as against Brown to take the case to the jury.

C. F. Capell, State highway patrolman and witness for plaintiff, testified in substance, except as quoted verbatim, as follows: At the place of collision the highway is 20 feet wide with narrow shoulders and runs generally east and west. Metcalf was proceeding westwardly, Brown eastwardly. Tire marks indicated that the Metcalf car, over a distance of 373 feet, ran off the hardsurface on the south side, crossed the highway to the north shoulder, proceeded along the shoulder, then back to the left side and collided with the Brown car in the south lane, 5 or 6 feet south of the center line. The Brown car came to rest south of the highway, the Metcalf car on the north side of the high-

way. Both cars were heavily damaged. Plaintiff, standing beside the patrol car at the scene, said that Metcalf was driving and lost control, that Metcalf was "flying." The patrolman saw Metcalf in the emergency room of the hospital. He was belligerent and had the odor of intoxicants on his breath. When he saw the patrolman he said: "Yeah, I'm your man; I'm the one you're looking for." He said he was intoxicated. The patrolman shared that opinion. The patrolman found 4 or 5 cans of beer in the Corvair, but no whiskey or vodka bottles.

Summary of plaintiff's testimony: They left Marshall, N. C., about 5:45 P.M., to attend a basketball game at Rosman. Metcalf, age 17, was driving his sister's Corvair. Plaintiff, age 21, was riding in the front seat on the right. Two teen-age boys were in the back seat. As soon as they were in the car Metcalf started "going through the gears," and plaintiff told him to slow down. In proceeding toward Buncombe County Metcalf again was going "pretty fast," taking curves at 45 and 50; plaintiff again cautioned him to slow down. After entering Buncombe County they stopped at "Pike's Place" and Metcalf bought a case of beer (24 cans). They opened four cans and each drank one. Between Pike's Place and Asheville Metcalf got up to 70 or 75, "he might have hit 80." Plaintiff asked him to slow down "two, three or four times." At Asheville they stopped at an ABC store. Plaintiff went in and bought two pints of vodka. One of the boys furnished the money. Plaintiff gave one pint to the boys in the back seat, and put the other in his pocket and told Metcalf "it was not going to be opened until we got (sic) back." Plaintiff drank one can of beer after they left Asheville. "Between Asheville and Brevard, Joe (Metcalf) would speed up at times and get real fast," and plaintiff would ask him to slow down. Metcalf "would slow down for six or eight miles, and then he would speed up again. He would speed up to seventy, seventy-five or eighty. He did the same things the time before he got to Asheville." When they reached Brevard, they inquired where the gymnasium was, went there, bought tickets, entered and discovered they were at the wrong basketball game. They left and went back to the highway. They "circled around" a cafe and whistled at some girls or talked to them.

Plaintiff testified: "I do not remember the other boys getting out of the car (at the cafe). I'm not sure. I know I did not get out. It could have stopped but I do not remember. I was asleep. No, I did not know that Joe (Metcalf) was under the influence of beer and vodka. . . . He drank one beer. He did not drink any vodka to my knowledge. . . . I put the vodka in the lefthand pocket of my topcoat. That bottle was to be mine and Mr. Metcalf's. I did not give him any of it. It got broke in the wreck."

Plaintiff stated that he did not remember anything from the time he went to sleep until he regained consciousness at the hospital about four days later. He said that he had alleged in his complaint that Metcalf was intoxicated at the time of the collision because Metcalf told him he pleaded guilty to drunken driving on the occasion of the collision. Plaintiff explained his sudden falling asleep at an early hour (about 7:15 or 7:30 P.M.) in this wise: "I had just gotten in from working night shift in Oregon and I was trying to get changed around to sleeping nights and I was just about sleepy all the time. I got in the car where it was warm and I went to sleep on the way out there. I had been back from Oregon fourteen days when this accident happened. No sir, I had not gotten my sleep readjusted in those fourteen days. About all I had to do during that time was to sleep."

There was no further evidence for the plaintiff. Defendants offered no evidence. The court allowed defendants' motion for nonsuit.

The inquiry on this appeal is whether, when the evidence is considered in the light most favorable to plaintiff, he was guilty of contributory negligence as a matter of law.

Ordinarily, the question of the contributory negligence of a guest in an automobile involved in a collision is for the jury to decide in the light of all the facts and circumstances. *Dinkins v. Carlton,* 255 N.C. 137, 120 S.E. 2d 543. A judgment of involuntary nonsuit on the ground of contributory negligence will not be sustained unless the evidence is so clear on that issue that no other conclusion is reasonably permissible. *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209. The decision as to whether plaintiff is guilty of contributory negligence as a matter of law must be made in the light of the facts in each particular case. *Tew v. Runnels,* 249 N.C. 1, 105 S.E. 2d 108.

One who voluntarily places himself in a position of peril known to him and voluntarily continues therein fails to exercise ordinary care for his own safety and thereby commits an act of continuing negligence which will bar any right of recovery for injuries resulting from such peril. *Bogen v. Bogen,* 220 N.C. 648, 18 S.E. 2d 162. "An occupant of a motor vehicle who knows, or in the exercise of ordinary care should know, that he is being driven by a reckless, inexperienced, incompetent, or intoxicated person may be guilty of contributory negligence if he fails to take such steps to protect himself from harm as a reasonably prudent person would take under the same or similar circumstances." 61 C.J.S., Motor Vehicles, s. 492, p. 118. Conversely, "an occupant is not guilty of contributory negligence in failing to take steps to protect himself where he had no knowledge, and is not chargeable with knowledge, of the driver's recklessness or incapacity." *Ibid.*

Plaintiff's evidence shows that Metcalf persistently and repeatedly drove the Corvair, a small light-weight automobile, at excessive speeds and in a dangerous manner during the extended trip. Plaintiff contends that, notwithstanding this conduct on the part of the driver, he consistently remonstrated with the driver and each time caused him to resume safe and reasonable speeds. He points out that he restrained the driver from drinking an excessive quantity of alcohol and permitted him to drink only one can of beer, that the driver was not under the influence of intoxicants while plaintiff was awake, that falling asleep was not a voluntary act on the part of plaintiff but resulted from an unnatural sleeping routine because of previous night work, and that the collision occurred while he was asleep and could not take precautions for his own safety. He contends that his conduct was that of an ordinarily prudent man, or at most his conduct was for jury determination, and not contributory negligence as a matter of law.

In our opinion plaintiff's failure to take measures for his own safety was so palpable the only reasonable conclusion is that he has proved himself out of court. It is difficult to conceive of a situation in which peril to a passenger from the recklessness of a driver could be more manifest. From the moment the driver started the car his propensity for speeding and recklessness was indicated. He put the Corvair in motion by "going through the gears" in such manner as to bring on an immediate request to slow down. He repeatedly reached speeds of seventy, seventy-five and eighty miles per hour, took curves at forty-five and fifty, and when urgently requested he reduced speed only to resume the dangerous speeds again. This process continued throughout the trip. At the very first place beer could be bought, the driver, a youth of seventeen, purchased a case of beer and he and the passengers, including the plaintiff, drank one can of beer each. At Asheville the plaintiff himself purchased two pints of vodka at the request of one of the teen-age boys. Plaintiff was the only adult on the trip. He had at least three opportunities to quit the trip without having to request that the vehicle be stopped.

"If a guest, after protesting against the negligent or reckless manner in which the motor vehicle is being operated, fails to leave the vehicle when a favorable opportunity to do so is presented, he assumes the risk of the injury from further negligent or reckless driving. . . ." 61 C.J.S., Motor Vehicles, s. 491, p. 117. That is, he is guilty of contributory negligence as a matter of law if he is injured by reason of such negligent or reckless driving. This is especially true where speeding and dangerous driving has been repeated at regular intervals during an extended trip, despite the protests of the guest.

The fact that plaintiff fell asleep does not improve his position in this case. If he was to continue in the vehicle, the necessity that he remain awake and alert was imperative. There was need that the driver be restrained from speeding, recklessness and drinking. Falling asleep may constitute contributory negligence, as where a passenger goes to sleep knowing of an impending danger or hazard in the driver's operation of the vehicle. 61 C.J.S., Motor Vehicles, s. 488, p. 106. Plaintiff insists that falling to sleep was an involuntary act. But "The approach of sleep, 'tired nature's sweet restorer,' is usually indicated by certain premonitory symptoms, and does not come upon one unheralded. His (guest's) negligence, if any, lies in the fact that he does not heed the indications of its approach or the circumstances which are likely to bring it about." *Baird v. Baird*, 223 N.C. 730, 28 S.E. 2d 225. The onset of plaintiff's drowsiness was a further compelling reason why he should have abandoned the trip.

From the circumstances of the accident itself it is clear that the hazard plaintiff should have guarded against was the cause of the accident.

Affirmed.